Doe *versus* Monson and Seavy, *his trustee.*

Generally, it is only by the act of the owner that a contract-lien upon property can be created.

That rule was changed by the Act of 1848, which created a lien in behalf of laborers upon logs, masts, spars and lumber.

An owner of logs employed a contractor to drive them down the river at a stipulated price per thousand feet. The contractor hired laborers, who assisted in the driving. *Held,* that the laborers acquired a lien upon the logs.

Such owner, being summoned as trustee of the contractor, was allowed, out of the stipulated price for the driving, to discharge the laborers' liens.

When, in the same stream, there are logs of different owners, and each owner has employed sufficient laborers to drive his own logs, the lien of such laborers is solely upon the logs they were employed to drive, although it happen that the logs of all the ownerships, being intermixed, are driven collectively by all the laborers employed by all the owners.

On Exceptions from the District Court, Hathaway, J.

The question was whether Seavy, the supposed trustee, was liable upon his disclosure.

The disclosure exhibited substantially the following facts.

There had been placed in the stream a large quantity of logs, in several lots and of different ownerships, to be driven to a place of manufacture. Seavy, the supposed trustee, owned one of these lots. He contracted with Monson, the principal defendant, to drive that lot, at a stipulated price per thousand feet. Monson hired five laborers who assisted him in the driving. The owners of the other lots furnished a suitable number of other laborers to drive their respective lots. The logs soon became intermixed, and were all driven collectively by all the laborers, under an arrangement to which Monson assented.

Seavy was indebted for the driving of his logs. The laborers employed by Monson claimed to have, upon Seavy's logs, a lien for their labor, and, to secure that lien, brought suits against Monson, and therein attached Seavy's logs, but attached none of the other owners' logs.

Doe then brought this action, and summoned Seavy as the trustee of Monson. Seavy, *after the service* of the trustee

writ upon him, and for the purpose of dislodging the attachments and obtaining possession of his logs, paid provisionally the asserted lien-claims, amounting to the full sum for which he was indebted for the driving. The lien actions against Monson were however entered, and defaulted at the present term.

The Judge ruled that the supposed trustee should be discharged. To that ruling the plaintiff excepted.

*J. A. & S. H. Lowell,* for the plaintiff, presented, in argument, the following points : —

1. If any lien pertained to the laborers employed by Monson, it was upon the whole mass of logs, to whomsoever belonging, upon which their labor was expended. Seavy's logs were holden for only his proportionate part of their wages. If he had paid but that proportion, he would stand indebted to Monson, and would therefore be holden as his trustee in this suit. When he paid more than that proportion, he did what he was not bound to do, and the payment was in his own wrong.

2. The laborers who attached Seavy's logs, were never employed by him, and they had, therefore, no lien upon them. He hired Monson to drive at a fixed price per thousand. And Monson, without any direction of Seavy, employed the laborers. They must be considered as working upon his credit. Seavy, therefore, was under no obligation to pay them.

3. The lien-rights, if any existed, were never perfected by a seizure of the logs upon the executions. Perhaps the suits would have been otherwise adjusted. The executions might have been collected of Monson. The payment by Seavy was therefore premature and unauthorized.

*G. F. Talbot,* for the trustee.

WELLS, J. — By the Act of August 10, 1848, chap. 72, "any person who shall labor at cutting, hauling or driving logs, masts, spars or other lumber, shall have a lien on all logs and lumber he may aid in cutting, hauling or driving as aforesaid, for the amount stipulated to be paid for his personal services, and actually due. And such lien shall take prece-

dence of all other claims except liens reserved by the State of Maine or the Commonwealth of Massachusetts for their own use, and the lien shall continue sixty days after the logs, masts, spars or other lumber subject thereto shall have arrived at their place of destination, previous to being rafted for sale or manufacture." And "any person having a lien as aforesaid may secure the same by attachment," &c.

The persons claiming the lien in this case were employed by Monson, the defendant, and not by the trustee. A lien is a qualified ownership, and, in general, can only be created by the owner, or by some person by him authorized. *Hollingsworth* v. *Dow*, 19 Pick. 228. But the language of the Act very clearly shows the intention of the Legislature, to give a lien to all persons, who should perform labor in driving logs, and therefore those, who were employed by the defendant Monson, had a lien upon them.

It appears, that there were logs of other persons driven with those belonging to the trustee. And those persons employed men to perform their portion of the labor; each one such number of men, as was supposed to be equal to his proportion of the timber collected together in one body. The different owners, employing their own men to drive logs, would not be debtors of any but of those by them employed, and the lien could attach to those logs only, which, the men, claiming it, were employed to drive. The men under Monson were not employed to drive the logs of the other owners, but the logs of the trustee. By the statute they are to have a lien for the amount stipulated to be paid, and it must be upon the logs for the driving of which they are to be paid. They were not to be paid for driving the logs of others, but those of the trustee.

The arrangement between Monson and the other owners, was not a contract to drive their logs, but for the men employed by each to unite and drive in common. It did not alter the contracts previously made between the parties, but provided a different mode for the performance of the labor, for the interchange of which, satisfaction was made in the mutual aid

rendered. The men employed by Monson have no claim on the other owners for their services, nor does it appear that he has any claim on them, and consequently there is no lien on their logs, and it must be confined to the logs of the trustee, and cannot be apportioned upon the logs owned by others. If the lien extended to the logs of the several owners, whether those claiming it could insist upon satisfaction out of the logs belonging to one of them, for the whole sum due, it is not necessary to consider.

The lien being an incumbrance upon the property of the trustee, he had a right to discharge the attachment, by which it was secured, and was not bound to wait and allow his property to be sold on execution. The statute does not require him so to do, and it would be exceedingly oppressive on the part of the owners of logs, if they were not permitted to discharge such liens, and relieve their property from the embarrassments and delay incident to attachments and sales.

There are no facts presented by which it can be inferred, that the debts paid were not due. The trustee had no control over the actions brought against Monson, so as to direct the disposition of them, after he had paid the several claims for which they were brought, and his rights cannot be affected by the defaults in those actions.

*The exceptions are overruled.*