THOMAS REILLY v. CASPER C. STEPHENSON (CONTRACTOR)
AND CHARLES E. EASTMAN (OWNER OF LOGS).

*Act No. 145, Laws of 1881, known as the log lien law, constitutional—
Statute declares the lien and forms a part of contract between log-owner
and contractor—Claim of workmen similar to seamen's wages—Owner
of timber presumed to know the law—Can so frame his contract as to
protect the laborer by providing for payment of his wages in contract—
Proceedings in rem—Notice of time and place of condemnation essential
to their validity—Legislature prescribes what notice shall be—Owner
must have opportunity to contest validity of lien, and amount due—
Affidavit for attachment under lien law—Sufficient if it states every-
thing required by the statute—Failure to give reasonable notice to log-
owner will not avoid the writ—No valid judgment can be rendered against
logs—Service on April 22—Of writ returnable April 28—Held sufficient.*

1. Act No. 145, Public Acts of 1881, giving a *lien* for labor performed
in cutting and skidding logs by a *laborer* for a *contractor*, as against
the *owner* of the logs, between whom and the *laborer* there is no
*privity* of contract, as also the provisions for its enforcement, are not
unconstitutional. The statute *declares* the lien, and, although there
is no direct *privity* of contract between the *laborer* and the *owner* of
the logs, yet the *law* enters into and forms a part of the *contract* be-
tween the owner and contractor.[1]

2. The labor of workmen in cutting, skidding, hauling, banking, and
running saw-logs is of a similar character to that of seamen, enhanc-
ing the value of the forest product, and, by transporting it to a place
of manufacture, makes that both *valuable* and *available* which with-
out such labor would remain comparatively *worthless*. The owner of
standing pine, when he makes a contract for lumbering, understands
perfectly well that this labor must be performed, and that the law
gives the laborer a *lien* upon the logs as *security* for his *reasonable* re-
ward for his services; and he can so frame his contract as to protect
the laborer of his contractor, and preserve his logs from liens, by
providing in such contract for the payment of the men employed by
the contractor.

3. It is essential to the validity of proceedings *in rem* that notice shall be
given of the *time* and *place* of condemnation . What this notice shall
be the Legislature must prescribe, but an opportunity must be given

[1]See Act No. 229, Laws of 1887, which repeals former laws and pro-
vides a more perfect remedy.

to the owner of the property to appear and contest the *validity* of the *lien*, and the *amount* due.

4. An affidavit for attachment under Act No. 145, Laws of 1881, which states everything required to be stated by the statute to authorize the issuing of the writ, is sufficient, the *form* of the affidavit being prescribed by statute.[1]

5. A failure to give a *reasonable* notice to the owner of the *logs* will not render the writ of attachment *void*, but no *valid* judgment could be rendered against *them*, and they would not be affected thereby.

6. Where a writ of attachment was issued to enforce a lien for labor on saw-logs on April 20, returnable April 28, and served on the owner of the logs on April 22, who appeared *specially* on the return-day to object to the jurisdiction of the justice,—

   *Held,* that the notice was sufficient.

Certiorari to review proceedings in justice's court to enforce a lien for labor on saw-logs.

Argued June 24, 1886. Writ quashed July 21, 1886, and case remanded for further proceedings.

*Ball & Hanscom,* for petitioner.

*John Power* (*Cahill & Ostrander,* of counsel), for respondent.

CHAMPLIN, J. Thomas Reilly worked 148 days as a foreman in defendant's lumber camp, at an agreed price of $60 a month. His work consisted in cutting and banking saw-logs, and the last work performed was on the twenty-third of March, 1886.

On the twentieth of April, 1886, he filed a claim of lien upon between eight and nine hundred thousand feet of pine saw-logs, upon which his labor had been performed, under Act No. 145 of the Public Laws of 1881. On the same day he made and filed with a justice of the peace an affidavit in the form provided by that act, and the justice issued an attachment in the form given in the act, upon which the sheriff seized the property described in the writ, and served the defendant with a certified copy, and also served Charles E. Eastman, the owner of the logs, with a copy.

[1]See *Babcock v. Cook,* 55 Mich. 1.

Stephenson made no defense, but Eastman appeared specially on the return-day before the justice, when it was admitted by the plaintiff's attorney that Charles E. Eastman was the owner of the timber, and has been, ever since the timber was cut from which the logs attached were made, the sole and absolute owner of said logs. He then moved that the writ of attachment be quashed, and the proceedings dismissed, as against his property seized under the writ, for the following reasons:

" 1. It is not alleged in the affidavit upon which the writ of attachment in said cause was issued, that the said defendant, Casper C. Stephenson, had any right or authority whatsoever to procure, or cause to be performed, any of the labor and services upon the logs mentioned in said affidavit, for which said plaintiff claims a lien thereon.

" 2. It is not alleged in said affidavit that the work claimed to have been done was done for the owner of the logs sought to be attached, or for the contractor with the owner, or subcontractor, nor for whom such work and labor was performed.

" 3. There is no allegation in said affidavit as to who is the owner of the logs upon which the work and labor is claimed to have been done, and upon which attachment is sought, either at the time when such labor is claimed to have been done or at the present time.

" 4. The writ of attachment issued in this cause is void, because it directs the officer to serve, or cause to be served, a copy of the writ upon the owner of the property to be attached, his agent or attorney, if such owner, agent, or attorney be known to him, and residing in this State, without giving the name of such owner, thereby leaving it to the determination of the officer serving the writ as to who is the owner of the logs sought to be attached.

" 5. The writ of attachment issued in this cause is void, because it authorizes the officer to serve a copy of said writ upon the owner of said logs, his agent or attorney, on the return-day of said writ, if such owner, agent, or attorney be known to said officer and residing in this State.

" 6. The writ is void because it authorizes service to be made upon the owner of the property sought to be attached any time on the return-day of the writ, although the suit may have been previously determined by verdict and judgment.

" 7. Act No. 145 of the Session Laws of the State of Michigan of 1881, in pursuance of which these proceedings are attempted and this suit brought, is unconstitutional and void.

" 8. The affidavit upon which the said writ of attachment issued in this case is insufficient, in that it does not allege that the indebtedness, or any part thereof, is due, or was due at the time of the making of said affidavit, for which a lien is claimed upon the property sought to be attached."

The motion was overruled, and the owner took no further proceedings in the case before the justice, who proceeded to trial, and rendered judgment against Stephenson for $300, and found that said amount was due for work and labor performed by the plaintiff in cutting, skidding, hauling, and banking between eight and nine hundred thousand feet of pine saw-logs, being the property mentioned in the plaintiff's declaration, and that the plaintiff has a lien upon said described property for the amount.

There was no evidence in the case showing any contract relations between Eastman, the owner of the timber and logs, and Stephenson, the defendant in the suit, and none between such owner and the plaintiff.

In this case the writ of attachment was issued the twentieth of April, and was made returnable on the twenty-eighth day of April, 1886, at 9 o'clock A. M., and was personally served on the defendant, Stephenson, on the twentieth and upon the owner, Eastman, on the twenty-second day of April, 1886.

All the proceedings appear to have been taken in accordance with the statute.

This act came before this Court for consideration in the asee of *Shaw v. Bradley*, 59 Mich. 199. We were asked then to determine the constitutionality of the act. I then said that I had no doubt but that it was competent for the Legislature to provide for security by way of a lien in behalf of a laborer, and also to provide a remedy for the enforcement of such lien by attachment, in cases where the possession of property upon which the labor is performed is not retained by the person performing such labor. It was

further observed in that case that no difficulty could arise in the enforcement of the lien in the single case of a contract between the owner of the logs, or other property subject to lien, and the person performing the labor. Such was that case, and we held that the lien could be enforced.

The question presented by this record is whether the statute creates a lien in favor of the laborer for a contractor, as against the owner of the logs, between whom and the laborer there is no privity of contract, and if so, whether the statute for enforcing such lien is valid. I think the statute contemplates that the lien shall attach in favor of the laborer as against the owner of the logs. It is analogous to that of seamen for their wages, concerning whom Chancellor Kent says :

"They may disregard bottomry bonds, and pursue their lien for wages afterwards, even against a subsequent *bona fide* purchaser. It follows the ship and its proceeds into whose hands soever they may come by title or purchase from the owner. Their demand for wages takes precedence of bottomry bonds, and is preferred to all other demands, for the same reason that the last bottomry bond is preferred to those of a prior date. Their claim is a sacred lien, and, as long as a single plank of the ship remains, the sailor is entitled, as against all other persons, to the proceeds as a security for his wages, for by their labor the common pledge for all the debts is preserved." 3 Kent, Comm. 197.

The labor of workmen in cutting, skidding, hauling, banking, and running logs is of a similar character. Their labor enhances the value of the product, and, by transporting it to market,—a place of manufacture,—makes that both valuable and available which without such labor would remain comparatively worthless.

The owner of standing pine, or of logs, when he makes a contract for lumbering, understands perfectly well that this labor must be performed, and that every stroke of the axe and every hour's labor enter into the material and enhance its value ; and he also understands that the law gives to the laborer whose exertion is put forth for his benefit a lien upon the logs upon which his labor is expended, as a security for

his reasonable reward for his services.    Understanding this, the law is not unreasonable; for he can so frame his contracts as to protect the laborer of his contractor, and preserve his logs from any liens, by providing in his contracts for the payment of the men.

This is common knowledge as to railroad contracts, and other contracts, where the subject thereof is liable to lien of workmen.    The owner must intend that the lien of the laborer shall attach, and his own rights be subject thereto, just as a purchaser of a vessel, or one taking a bottomry bond, must be held to have taken the bond or made the purchase subject to the sailors'. wages, both before and thereafter accruing, which will take precedence of their own claims.

Similar statutes are found in New Hampshire, Maine, and Wisconsin, where, as well as in Michigan, a very large number of laborers are engaged in lumbering operations, who depend upon their daily earnings for the support of themselves and families, and whom experience has shown were defrauded oftentimes of their hard-earned wages by irresponsible and unscrupulous contractors; and the Legislature felt impelled to extend protection to this deserving class by enacting lien laws, giving them security upon the logs upon which their labor is performed.    The courts of those states have held that it is competent for the legislature to enact that the lien shall attach to the logs of the owner although the labor was performed for one who has contracted with the owner to cut, haul, and deliver the logs for a gross sum, which the owner has paid.  *Winslow v. Urquihart,* 39 Wis. 260; *Munger v. Lenroot,* 32 Id. 541; *Doe v. Monson,* 33 Me. 430; *Oliver v. Woodman,* 66 Id. 54.

The statute declares the lien, and, although there is no direct privity of contract between the owner and the laborer employed by the person contracting with the owner, yet the law in this, as in all other cases providing remedies, enters into and forms part of the contract, and so has its bearing upon the contract entered into between the owner and the contractor.

In the case before us there is no evidence contained in the

record of the exact relations existing between Eastman, the owner, and Stephenson, but we cannot presume that Stephenson was a trespasser (*Collins v. Cowan*, 52 Wis. 634); and in the absence of proof upon the point, we may presume that he was either the agent of Eastman for getting the logs cut and run, or his contractor.

The statute requires that in all suits to enforce the lien the person, company, or corporation liable for the payment of such debt or claim shall be made the party defendant. It thus appears that unless the owner of the logs is the person liable for the payment of the debt he will not be made a party defendant. The officer executing the writ, however, is required by section 6 to serve, or cause to be served, a copy of the attachment, on or before the return-day mentioned in the writ, upon the owner of the logs, etc., their proper agent or attorney, if such owner, agent, or attorney be known to him and residing in this State; and section 13 reads:

"Any person owning or claiming any of said logs, timber, posts, ties, poles, bark, bolts, or staves, and not a party to said suit, may, upon application, show such ownership or interest at any time before verdict in said suit, and may appear and defend, the same as if made parties originally to said cause."

Proceedings to enforce a lien upon logs of the owner who is not in contract relations with the lienor, under this statute, assume a double aspect. As to the defendant in the suit, the proceeding is *in personam*, and the judgment obtained is a personal one, while the attachment against the logs of the owner is in the nature of a proceeding *in rem*. It is essential to the validity of proceedings *in rem* that notice shall be given of the time and place of condemnation. What this notice shall be the Legislature must prescribe. An opportunity must be given to the owner of the *res* to appear and contest the validity of the lien, and the amount due: *Redington v. Frye*, 43 Me. 578; *Parks v. Crockett*, 61 Id. 489; *Sheridan v. Ireland*, 66 Id. 138; *Jacobs v. Knapp*, 50 N. H. 71.

Whether the Legislature has made provision which will meet all cases we need not now determine. It is sufficient

to say that the logs of the owner cannot be seized and confiscated to pay the debt of his contractor, or other person, without a reasonable notice, and an opportunity of contesting the suit.

In this case such notice was given. The admission on the record admits the ownership of the logs to be in Eastman, so that no question arises but that the proper party was notified; and, although he appeared specially, yet he had an opportunity to defend, and of this he makes no complaint.

The first, second, and third reasons stated by him for quashing the writ cannot prevail, because the affidavit states everything which the statute requires shall be stated in the affidavit to authorize the issuing of the writ, the form of which is prescribed in the act. *Parker v. Williams*, 77 Me. 418.

The fourth and fifth reasons are not open to the plaintiff in *certiorari*, because the facts admitted upon the record show that service was made upon the owner of the logs.

The sixth objection would not render the writ void. If the person served did not have reasonable notice, no valid judgment could be rendered against his logs, and they would not be affected by it: *Sheridan v. Ireland*, 66 Me. 138; *Parks v. Crockett*, 61 Id. 489.

The eighth reason stated for quashing the writ is not sufficient. As before observed, the affidavit complies with the statute, and is therefore sufficient: *Winslow v. Urquhart*, 39 Wis. 260.

With reference to the seventh reason, we have already stated that the act is not unconstitutional and void. Whether it can be enforced in all cases which may arise under it will depend upon the proceedings had in the particular case. In this case the proceedings appear to have been regular, and the owner of the logs had sufficient notice, and the writ of *certiorari* must be quashed, with costs, and the record remanded for further proceedings upon the judgment.

MORSE and SHERWOOD, JJ., concurred.

CAMPBELL, C. J. (*dissenting*). I do not think the statute contains sufficient provisions to protect owners of logs, and

its invalidity cannot be cured by service in one case, where there is no provision for it in others.