PACK, WOODS & COMPANY (A CORPORATION) v. WILLIAM H. SIMPSON, CIRCUIT JUDGE OF IOSCO COUNTY.

| 70 | 135 |
| 70 | 147 |
| 70 | 135 |
| 74 | 362 |
| 70 | 135 |
| 89 | 473 |
| 70 | 135 |
| 110 | 93 |

*Log lien—Attachment—Parties—Affidavit.*

1. Several laborers joined their claims, under the statute, for labor alleged to have been performed for a contractor upon logs belonging to *four* several owners, *each* of whose logs were designated by his mark, which logs were mixed and in the river drive. Said facts were stated in the affidavit annexed to the writ of attachment, in which it was alleged that the last day's work was performed in driving *said* logs. *One* of said log-owners moved to quash the attachment, because the affidavit showed that a *portion* of the labor sued for was not of the kind entitling plaintiff to a lien, and because it failed to show *what* labor was performed on the logs of *said owner*, and that a *last* day's work done on the logs of one of the *other* log-owners would not authorize the plaintiff to hold the logs of the *owner making such motion*, nor could claimants having no lien on *his* logs join with those having such lien in said suit.

   *Held*, that, it being conceded that *some* of the labor was entitled to a lien, the questions suggested were to be settled on

the trial, where the rights of all parties interested may be fully protected, as provided by How. Stat. § 8423.

2. A statement in an affidavit in attachment under the log-lien law of 1881, and amendments thereto, " that said plaintiff, and each of said claimants, have filed a lien for the amount due each of them for labor," etc., is a *substantial* compliance with the statute requiring said affidavit to state " that a statement of lien *required by law* was filed," etc., the lien mentioned in the affidavit having reference to " the lien required by law."

3. An affidavit and writ of attachment in a log-lien case, which describe the logs with certain and distinctive marks, and *as* all being in a certain drive terminating in a certain county, sufficiently describe the property to enable the sheriff to identify it; and, there being no complaint but that he actually seized the logs so marked and designated, an objection that the affidavit nowhere speaks of the logs " mentioned in the annexed writ" (the statutory language) is not tenable.

*Mandamus.* Submitted April 24, 1888. Denied May 3, 1888.

Relator applied for *mandamus* to compel respondent to quash a writ of attachment in a log-lien suit. The facts. and points of counsel passed upon by the Court, are state" in the opinion.

*M' Cutcheon & Elliott,* for relator.

*Trask & Smith,* for respondent.

LONG, J. The petition for *mandamus* in this cause states, substantially, that the relator is a corporation organized under the laws of this State, and that on August 22, 1887, James Whiting, through Trask & Smith, attorneys at law, sued out of the circuit court for the county of Iosco a writ of attachment directed to the sheriff of said county, commanding him to take all the pine logs found in said county bearing the marks[1] " B," " D," " N S," " S," and " Y Z."

---

[1] The original marks of " B " and " D " consist of the letters enclosed in a diamond-shaped rule, while " S " is enclosed in a triangle with a circle around it.

That, after procuring said writ of attachment, Frederic E. Smith, of said Trask & Smith, made and annexed to said writ of attachment an affidavit for and in behalf of said James Whiting, as follows:

"STATE OF MICHIGAN, ⎱ ss.
" County of Iosco,      ⎰

" Frederic E. Smith, being duly sworn, deposes and says that he is one of the attorneys for James Whiting, the plaintiff named in the annexed writ of attachment, and makes this affidavit for and in his behalf.

"That Richard F. Cade, Peter B. Cade, and Thomas Cade, composing the firm of R. E. Cade & Co., defendants named in the annexed writ. of attachment, are indebted to the plaintiff named in said writ in the sum of $1,449.93, as near as may be, and as near as this deponent can specify the same, over and above all legal set-offs, and the same is now due to said plaintiff for work and labor performed by said plaintiff and certain other laborers, whose names appear in the annexed schedule, marked ' Schedule A,' which schedule is hereby made a part of this affidavit, for cutting, skidding, hauling, banking, and driving a certain lot of pine logs, and for cooking for laborers working on said logs, and performing black-smithing and other artisan work upon said logs and tools and implements used in said work,—the marks upon said logs being hereinafter more particularly set forth.

"That the last day of said work was done on May 11, A, D. 1887, and was performed in driving said logs.

"This deponent further says that he is informed and believes that all of said logs which bear the mark of 'B' and 'D' belong to Pack, Woods & Co. ; that all that bear the mark 'N S' belong to Selling & Hansen; that all that bear the mark 's' belong to H. W. Sage & Co.; that all that bear the mark 'Y Z' belong to Wright & Davison; that deponent does not know the names of the persons who compose the above named firms.

" Deponent further says that said work was done under contracts made with said R. E. Cade & Co., and that said R. E. Cade & Co. are contractors or jobbers with each of said log-owners.

"Deponent further says that said plaintiff's individual claim for labor on said logs is less than $100, to wit, $74.75, and that the claim for labor of each person named in said annexed schedule is correctly set opposite each name in said schedule, over and above all legal set-offs.

"Deponent further says that said claimants have united their claims together, as provided by statute, and have designated and appointed the said James Whiting as their agent or attorney for prosecuting the lien claimed by each, and for collecting the same by any necessary suit; that said work was performed in the counties of Otsego and Crawford, in said State of Michigan; and that said logs were not put into the Manistee river, in said State, or any tributary thereof.

"Deponent further says that said logs are all in a drive terminating in Iosco county, Michigan, and that the whole or a portion of said logs are now in said Iosco county, and have been there since June 1, A. D. 1887, and that said plaintiff, and each of said claimants, have filed a lien for the amount due each of them for labor on said logs, in the office of the clerk of Iosco county, within 30 days after said work was completed, to wit, on June 8, A. D. 1887.

"FREDERIC E. SMITH.

"Subscribed and sworn to before me August 22, A. D. 1887.          G. L. CORNVILLE, Clerk of the Circuit Court."

That the attachment proceedings so commenced by said James Whiting purported to be instituted for the collection of $1,449.93, for which it was claimed in said affidavit the said James Whiting had a lien upon the logs mentioned in said affidavit, under and by virtue of Act No. 145, Laws of 1881, and the amendments thereto, being sections 8412–8427, inclusive, How. Stat.; and that said attachment proceedings were instituted, and have since been carried on, under the supposed authority of that act.

That the amount so claimed by said Whiting was made up by uniting the claims of 38 other persons upon the same logs with the individual claims of said Whiting; and that, after the said Frederic E. Smith had made and annexed the said affidavit to said writ of attachment, he made or caused to be made, and annexed to said affidavit and writ of attachment, a list of the said other claimants, with the several amounts of the claims set opposite their several names.

That afterwards, and on or about August 22, 1887, the said writ of attachment, with said affidavit and list annexed

thereto, was delivered to John W. Lanktree, sheriff of said county, and that said sheriff, on or about August 23, 1887, seized and took into his possession a large quantity of logs belonging to relator, of the value of $1,000 and upwards, and marked " B " and " D," and then lying in the Au Sable river, in said county; and that said sheriff has ever since held possession of said logs, and still holds possession of the same, under and by virtue of said writ of attachment; and that there is no other process or writ or other right whatsoever by which said sheriff claims to have seized or to hold said logs, or any part thereof.

That on or about March 2, 1888, relator caused to be entered, in the special motion book kept by the clerk of said circuit court, a motion to quash said writ of attachment, so far as the same affected relator's logs, and to release the same therefrom, and from all other proceedings taken against them under said writ of attachment, for the following reasons:

"1. Because the affidavit of Frederic E. Smith, attached to said writ, shows that some of the work and labor mentioned was not such as entitled the plaintiff to claim a lien upon said logs.

"2. Because said affidavit does not show that said work and labor was performed after April 1 and before October 1, 1887.

"3. Because said affidavit does not show that said logs were not got out to be run down, or were not run down, the Manistee river, or some water tributary thereto.

"4. Because said affidavit does not show when any of said work and labor was done upon any of said logs marked 'B' or 'D,' or any of said logs marked 'N S.'

"5. Because said affidavit does not show what work and labor was done upon any of said logs marked 'B' or 'D,' or any of said logs marked 'N S.'

"6. Because said affidavit does not show when the last day's work was done upon said logs marked 'B' or 'D,' or upon any of said logs marked 'N S.'

"7. Because said affidavit does not show how much is due

the plaintiff for labor on said logs marked 'B' or 'D,' or on said logs marked 'N S.'

"8. Because said affidavit shows that work and labor was done in Otsego and Crawford counties, and that statements of lien were filed in Iosco county, and that said work and labor was not all performed in running and driving said logs.

"9. Because said affidavit does not show that any of said logs marked 'B' or 'D,' or that any of said logs marked 'N S,' were in said Iosco county.

"10. Because said affidavit does not allege that a statement of lien required by law was filed at any time with the clerk of the county where said labor was performed, or with the clerk of any other county where said statement is authorized to be filed.

"11. Because said writ commands the sheriff to serve the same before the return-day thereof.

"12. Because said writ of attachment and said affidavit describe different properties, and said writ of attachment commands the sheriff to seize other property than that mentioned in said affidavit.

"13. Because said writ does not command the sheriff to seize, nor does it contain a description of, the property upon which the plaintiff claims a lien.

"14. Because no such statement of lien was filed by the plaintiff as the law requires.

"15. Because the law does not authorize the enforcement of such a lien against the property of separate, several, and distinct owners, nor provide any method of ascertaining how much is due the plaintiff from any such separate owner, or of apportioning a judgment for such claim among several owners.

"16. Because said affidavit shows that the logs mentioned therein were in a drive terminating in Iosco county, but does not show in what drive, or otherwise sufficiently describe the same.

"17. Because the said several statements of lien filed by the claimants in this suit show work and labor performed in Otsego and Crawford counties, but do not show that said logs were in a drive terminating in Iosco county, nor do any of the proceedings show a filing of any statement of lien in either Otsego or Crawford county.

"18. Because it appears that the matters contained in said affidavit could not have been within the personal knowledge of the affiant, but that said affidavit must have been made on information and belief.

"19. Because it appears from the proceedings in said cause that the amount claimed by plaintiff is made by uniting the claims of sundry other persons with the claim of the plaintiff, and it does not appear, from any of the proceedings, how much is due any one claimant for work and labor on any logs marked 'B' or 'D,' or any logs marked 'N S,' nor that each claimant performed labor on said logs marked 'B,' or 'D,' or on said logs marked 'N S,' nor does it appear that each of said claimants filed his statement of lien required by law, nor does it appear in the affidavit when each of said claimants performed his last day's work.

"Said motion is founded upon the several statements of lien filed by said claimants, and upon the files and records of said cause."

That on March 6, 1888, said motion came on to be heard before William H. Simpson, judge of said circuit court, in open court,—said James Whiting being heard on said motion by Trask & Smith, his attorneys, and said relator by M'Cutcheon & Elliott; and that, after the argument of said motion, said circuit judge overruled the same on the merits thereof; and that the relator is greatly injured thereby, and now prays that the writ of *mandamus* may issue to said circuit judge commanding him to quash said writ so far as the same affects the logs of the relator.

Upon filing the petition in this Court, an order to show cause was made and served upon the respondent, the said circuit judge, who made return thereto, admitting substantially the facts set forth in the petition; but claiming—

"*First.* That, if any of the labor claimed for constituted a lien on the logs, the motion to quash could not be granted. The amount of labor for which a lien existed could only be determined on the trial.

"*Second.* That the affidavit shows that the last day's work was done on May 11, 1887, and just how many other days' work could be properly claimed as a lien on said logs could only be determined on the trial.

"*Third.* That the affidavit complies substantially with the statute."

In answer to the *fourth, fifth, sixth,* and *seventh* reasons assigned, respondent says—

"That, in his opinion, when, as in this case, laborers are working for men who are contractors for various log-owners, upon logs indiscriminately intermingled together, the law does not require the laborer to keep a separate account of the time and labor spent upon each mark."

"*Eighth.* The affidavit claims for work driving upon a drive terminating in Iosco county, and the law requires such a lien to be filed in the county where the drive terminates.

"*Ninth* and *tenth.* The affidavit is not open to the objections made, but complies with the law.

"*Eleventh.* That, so long as a relator was properly served with the writ at the proper time, no injury has resulted from the command to serve the writ before the return-day.

"*Twelfth, thirteenth* and *fourteenth.* That the affidavit is not open to the objection urged.

"*Fifteenth, sixteenth, seventeenth,* and *eighteenth.* That the objection is not well taken.

"*Nineteenth.* That the answer made to the fourth, fifth, sixth, and seventh reasons fully answer this objection."

The application is for a writ of *mandamus* to compel the respondent, the Iosco circuit judge, to quash the writ of attachment for defects which relator claims appear upon the face of the affidavit and writ.

It is claimed by the first and fifth objections that the affidavit shows that some of the work and labor mentioned was not such as entitled the plaintiff to claim a lien upon said logs, and does not show what work and labor was done upon any of the logs marked " B," " D," or " N S," and that the affidavit may be literally true, and still the plaintiff have no lien on relator's logs, for the reason that the logs are affirmatively shown to be separate and distinct lots, and the labor which did not confer the lien may have been the only labor done on relator's logs.

There is no force in this objection. It is conceded by this objection that some of the labor may be entitled to a lien. Section 12 of the act provides for such cases in the form of the finding by the court or the verdict of the jury.

The second, third, and fourth objections have no force,

and need not be considered, and counsel for relator do not seriously urge them here. The reasons are in plain contradiction of the affidavit, as the affidavit does show that the last day's work was done on May 11, 1887, and was performed driving said logs, and that said logs were *not* put into the Manistee river, or any tributary thereof, but are in a drive terminating in Iosco county.

The objections urged under the sixth, seventh, ninth, and a portion of the nineteenth reasons are that the affidavit says that " Cade & Co. are contractors or jobbers with each " of the four log-owners mentioned, but a last day's work which might have been done on the Sage logs would not authorize the plaintiff to hold the relator's logs; that one claimant might maintain a lien on the Sage logs, another on the Davison logs, and a third on the Selling logs, and they could not unite with a claimant having a lien on relator's logs, and hold them, or require the relator to give bond for the united claims in order to get its logs.

If the position of the relator upon this point is well taken, it follows that men who work upon a lot of logs bearing different marks must keep a strict account of the labor they put upon each mark. A large amount of labor is usually done before logs are marked, and before the workmen can know what mark the logs will bear; and, even if this were not so, every laborer would be required to keep such strict and accurate account, at the peril of losing his lien for such labor.

If such a construction is given to this statute, it would render it wholly nugatory.

Where a contractor has contracts with different log-owners, and has in his employ a large number of men, cutting, skidding, falling, hauling, scaling, banking, driving, running, rafting, or booming logs, bearing different marks, and all indiscriminately intermingled, as they frequently are, it would not be possible for any laborer or set of laborers to make a

statement of his or their lien, or to enforce it under this statute, if such a construction was to be given it.

It is evident from the reading of the statute that this question is to be determined on the trial, where the rights of the laborer, the contractor, and the log-owner may each be fully protected. The statute provides:

"And, in those cases where the amount due is found to be a lien upon the property (or any portion of it) mentioned in plaintiff's declaration, the finding or verdict may be in the following form: (The court, justice, or jurors, as the case may be) say that there is due the plaintiff,   *   *   * in cutting,   * .   *   *   the property mentioned in plaintiff's declaration (or a portion of it, specifying the same), and that plaintiff has a lien upon said described property for said amount."

The party defendant in this case is the contractor, who is personally liable for the debt. The statute, however, requires that the log-owner, when known, shall be served with a copy of the writ on or before the return day.

The proceeding against the contractor is *in personam*, and the judgment obtained is a personal one; and, though it should appear on the trial that no lien had been acquired on the property described in the writ, the plaintiff shall not be nonsuited thereby, "but shall be entitled to judgment as in other civil actions."

In *Reilly v. Stephenson*, 62 Mich. 509 (29 N. W. Rep. 99), one of the objections made to the affidavit annexed to the writ was—

"Because it directs the officer to serve, or cause to be served, a copy of the writ, upon the owner of the property to be attached, his agent or attorney, if such owner, agent, or attorney be known to him, and residing in this State, *without giving the name of such owner.*"

It appeared that the owner was personally served with a copy of the writ, and had an opportunity to defend, and this Court held the proceedings regular.

In the present case the log-owners were all named in the

affidavit and writ, and were each served with a copy of the writ.    They may appear and defend in the action, and their rights made to appear on the trial.

The relator, under its tenth reason, claims that the affidavit does not allege that a statement of lien *as required by law was filed*, and therefore does not meet the requirements of section 8 of the act.    This section gives the form of the affidavit, and says—

"And that a statement of lien required by law was on the * * * duly filed;"—

While the affidavit in the case says—

"And that said plaintiff, and each of said claimants, have filed a lien for the amount due each of them for labor on said logs," etc.

This is a substantial compliance with the statute.    The lien mentioned in the affidavit has reference to the lien required by law.

It is claimed by the relator that the twelfth, thirteenth, and sixteenth objections are well taken, for the reason that section 6 of the act provides that—

"The attachment shall require the sheriff * * * to attach * * * the logs * * * described in the writ, or so much thereof as are necessary to satisfy the claim of the plaintiff," etc. ;—

While section 7, prescribing the form of the writ, provides:

"We command you to attach * * * (here insert a description of the property upon which a lien is claimed), or so much thereof," etc.;—

And that section 8 requires the affidavit to show that the claim is for labor on the logs *mentioned in the writ ;* that the affidavit nowhere speaks of the property "mentioned in the annexed writ."

There is no force in these objections, as the affidavit and writ both describe the logs with certain and distinctive

70 Mich. 10.

marks, and as all being in a certain drive terminating in Iosco county. We think this was a sufficient description to enable the sheriff to identify the property, and no complaint is made but that the sheriff did actually seize and take the property bearing these marks, as commanded by the writ.

The fifteenth objection denies the right of the plaintiff to join the relator with the other log-owners in this suit; it appearing that none of the log-owners is the principal defendant in this suit. These questions have already been discussed by what we have said under the sixth, seventh, ninth, and nineteenth objections, and need no further remarks.

The proceedings appear to be regular, and the affidavit and writ in full compliance with the statute, and sufficient to warrant the seizure of the logs.

The writ must be denied.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred. CAMPBELL, J., did not sit.