CHARLES APPLEMAN v. MOSES MYRE ET AL.

*Log lien—Description of property—Laborer under contractor of several owners—Enforcement of lien.*

1. There is no authority for finding a lien upon logs not described in the writ or declaration in a log-lien suit.

2. A laborer working on a drive of logs belonging to different owners and marked accordingly, and who has a lien upon the *whole* mass of logs for his services, cannot enforce it *in whole* upon a portion of said logs which are separately seized, the record failing to show that the contract for driving was made jointly with all of the log-owners.

Error to Muskegon. (Dickerman, J.) Argued February 7, 1889. Decided April 12, 1889.

Proceedings for enforcement of a log lien. Defendant log-owners bring error. Reversed as to lien. The facts are stated in the opinion.

*DeLong & O'Hara,* for appellants.

*Chamberlain & Sessions,* for plaintiff.

LONG, J. Moses Myre, the defendant, was employed

as a contractor by the owners of logs in Cedar creek, in the county of Muskegon, to drive the logs in that creek. Myre was also employed by some of these log-owners to cut, haul, and bank some of these logs upon Cedar creek during the winter of 1887 and 1888. The plaintiff, with others, worked for Myre in cutting and banking the logs in the winter ·time and driving in Cedar creek drive later. Myre failed to pay his men, and plaintiff, claiming a lien for his work and labor, filed his statement of lien in the county clerk's office for Muskegon county, and instituted and carried on proceedings for the enforcement of such lien before a justice of the peace, under Act No. 229, Laws of 1887. The statement of the lien, the affidavit for the writ of attachment, and the declaration, contain the same description of property upon which the lien is claimed, as follows:

"A large quantity of saw-logs, consisting of white and black ash, maple, basswood, oak, elm, birch, pepperidge, pine, and hemlock, banked and put into what is known as 'Cedar Creek,' in the county of Muskegon, and now situate upon the banks of Cedar creek, and in said Cedar creek, and in Muskegon lake, and in the booms of the Muskegon Booming Company and the mill-booms upon Muskegon lake, which said logs constitute what is known as the 'Cedar Creek Drive,' and are marked as follows: A harp; H bar I; a star 57; heart X; box 5; 2 K 2; 4 box 7; O box S; box 56; L C or J K."

By virtue of the writ of attachment the officers seized the logs described in the writ, and served the writ upon Montgomery, Champagne & Co., Beaudry, Champagne & Co., George E. Wood, Bertrand & Co., and the Muskegon Booming Company, they being the owners of the logs, and no other owners or agents being known to the officer. Upon the return-day, the plaintiff appeared, as did also the defendant, and the log-owners who had been served, except the Muskegon Booming Company. The log-owners appeared specially for the purpose of defending against the lien. The

defendant appeared and confessed judgment. The justice rendered judgment against defendant for $21, and found this amount did not constitute a lien upon any of the logs. He also gave judgment for $61 against defendant and against the logs marked J—K and S K Y, which the justice found were a portion of the logs described in the declaration as the " Cedar Creek Drive," and also a judgment against defendant for $216.20, and against all the property described in the declaration constituting the Cedar Creek drive, and also for $10 costs of suit. The defendant log-owners then sued out of the circuit court for Muskegon county a writ of *certiorari,* where the cause was heard and the judgment of the justice's court affirmed. Defendant log-owners bring the case to this Court by writ of error.

The first contention is that there was no authority for finding a lien upon the logs marked S K Y, as these logs were not described in the writ, and not seized by the officer. The fact is conceded in the brief of counsel for plaintiff that these logs so marked were not described in the writ or declaration, but counsel contend that, inasmuch as no error of this kind is alleged in the affidavit for the writ of *certiorari,* counsel cannot now raise that question for the first time in this Court. We think, however, that the fourth allegation of error in the affidavit for the writ of *certiorari* is sufficiently specific to cover this objection, and that the justice was in error in finding that these logs, marked S K Y, could be held under the lien filed, which in no manner described these logs.

A more important question, however, is raised. It appeared upon the trial before the justice that other parties had logs in the Cedar creek drive than the logs described in the statement of lien, affidavit, and writ of attachment and declaration. Some of these logs were

marked with a spear-mark, belonging to John Torrent,
some marked S E A, belonging to Frank Alberts, and
others marked G bar M and P V, belonging to Gow,
Majo & Co., and some other logs, bearing other marks,
belonging to different parties. These logs were all being
driven in the same drive, and the plaintiff's time was
expended in driving these logs, as well as in driving the
logs claimed under the lien. They were in the same
drive, and a part of the labor for which plaintiff makes
claim was expended upon these, as well as upon the logs
seized. The question is therefore presented upon this
record whether a laborer, working on a large drive of
logs, consisting of various marks, and belonging to differ-
ent owners, and who has a lien for his services thereon,
can enforce that lien *in whole* upon one or more partic-
ular marks of logs belonging to one or more of the per-
sons interested in the whole drive. The record does not
disclose whether the contract of Myre for the driving of
these logs was one made jointly with these various own-
ers, or whether his contract was with each separate owner.
Under the circumstances stated in this record, we cannot
infer that it was a joint contract with all the owners,
including those whose logs were not seized, and who are
not made parties to these proceedings. It appears that
all these logs were put into this drive, and indiscrimi-
nately intermingled, and all taken down in the one drive.
On the trial the plaintiff had judgment for the full
amount of his claim, and all but $21 was assessed as a
lien upon these logs, although it appeared that a part of
the labor was expended upon logs not seized, and belong-
ing to different owners than those served with process
and appearing in the case. In *Pack v. Circuit Judge*,
70 Mich. 135, 143 (38 N. W. Rep. 6), it was said by the
Court that where a contractor has contracts with differ-
ent log-owners for cutting, hauling, etc., logs, bearing

different marks, and all indiscriminately intermingled, it would not be possible for any laborer to keep a separate account of the exact amount of labor expended upon each class of logs, and the last day's work done on each, so that he might specify the same in filing his statement of lien, but that this question is to be determined on the trial, where the rights of the laborer, the contractor, and the log-owner may each be fully protected.

It is contended, however, by counsel for plaintiff that, if there were other owners than those served and appearing, the log-owners had that knowledge, and, if they desired to have the other owners made parties defendant, it was their duty to make application to the court either by plea in abatement or by petition or motion, and have the other owners brought into the case, and that they cannot now complain of their own fault or omission in not doing so.

This is a statutory proceeding, and the right to file or enforce the lien is only given by the statute. No such right exists outside of the plain terms of the statute, and the proceedings must in all respects comply with these statutory provisions. Before these statutes came in force the log-owner took his logs free from the lien of any person except such as might be acquired in a proceeding upon some debt or obligation created by his own contract. After this statute came in force, the presumption is that in making contracts for cutting, hauling, driving, etc., logs, this statute entered into and became a part of the contract, so that the laborer was given a lien upon logs, lumber, etc., upon which he expended his labor, and that the log-owner was fully cognizant of the fact that, if the contractor failed to make payments to the laborers, their lien might attach if these statutory proceedings were had. But it was never intended to give the laborer a lien upon one man's property for labor

expended upon that of another, even if the Legislature had any such power.

While it is undoubtedly true that in the enforcement of these liens the laborer may take only a part of the property upon which he has expended labor, and may collect from such part the value of the labor expended upon the whole, yet this must be limited to the labor done upon one owner's logs. He cannot be permitted to seize and subject to his lien the property of one owner to pay for labor expended upon the logs of another owner. These are matters that must be determined at the trial. The plaintiff, on the trial, has the burden of showing how much, or what proportion, of his labor has been expended upon the logs or lumber of each owner, and, this being ascertained, he may have his lien assessed upon such product for the value of labor expended thereon. It appears that there were eight owners of these logs in the drive. Four only were served with process, and appeared in the action. Some testimony was given showing, or tending to show, how many logs each had in the drive. Several hundred thousand of these logs were not subjected to this lien, nor seized under the writ. The justice was in error in subjecting the logs actually seized to the payment of the debt of the other owners whose logs were not seized. The property of one man cannot be taken to pay the debt of another, unless some fact appears showing some privity of contract between them.

The judgment in the circuit and justice's court, so far as it attempts to enforce a lien against these logs, must be set aside and held for naught. The judgment obtained against Moses Myre is not affected by this proceeding. The log-owners will recover costs of all the courts against the plaintiff.

The other Justices concurred.