## McGUIRE *v* McCALLUM.

LOG-LIEN PROCEEDINGS—APPORTIONMENT OF TIME EMPLOYED.

Where the owners of adjoining timber lands enter into several agreements with a logging contractor, and the agreements do not indicate that any confusion of the work of the several owners is contemplated, a workman who is employed under the various contracts indiscriminately, no separate account being kept of the labor performed by him upon the logs of each owner, will not be permitted to assert a lien for labor against the entire quantity of logs produced.

Error to Saginaw; Wilber, J. Submitted April 29, 1896. Decided July 8, 1896.

Proceedings under the log-lien law by Frank McGuire against David M. McCallum, the Gratwick, Smith & Fryer Lumber Company, Penoyar Bros., and William H. Simpson. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*M. J. Connine,* for appellant.

*O. E. MCutcheon* (*Humphrey & Grant,* of counsel), for appellee Lumber Company.

*Henry & Pugh,* for appellees Penoyar Bros.

MONTGOMERY, J. Plaintiff brought this suit on behalf of himself and others to establish a lien on a quantity of logs cut and put afloat in the county of Oscoda by David McCallum, who was their employer, and who had three separate contracts with those named as codefendants. viz., William H. Simpson, the Gratwick, Smith & Fryer Lumber Company, and Penoyar Bros.

The circuit judge directed a verdict for the defendants, assigning various grounds for the conclusion reached.

But, in the view which we take of the case, it will only be necessary to refer to one, as we think, upon the record, that the conclusion reached upon the ground that the plaintiff had not shown the amount of work which was a lien upon the logs of any particular owner is valid. The evidence tended to show that, after taking the three contracts, McCallum established three camps along the river, known as "Foster's Camp," "Cook's Camp," and "Davidson's Camp." The workmen whose claims are involved in this case were employed in Foster's camp. The evidence tends to show that there were put in at this camp about 2,000,000 feet of logs belonging to Gratwick, Smith & Fryer Lumber Company, about 800,000 feet belonging to Simpson, and about 700,000 feet belonging to Penoyar Bros. Gratwick, Smith & Fryer logs were marked "Diamond S.," the Simpson logs were marked "3-33," and the Penoyar logs were marked "V. C." The logs cut at each camp were mixed together, and banked at one place on the river. The lands of the different owners were adjoining, some near the camp and some distant. The foreman did not keep a separate account of the work done by the men on the land of the different owners. He testifies that it would have been impossible to keep such a separate account, but this is obviously a misstatement. While it may have been difficult, it is clear that it was not impossible. He also testifies that when he wanted a man on something else he would take him from one job to another, and from one lot of logs to another, but that usually, in the cutting of a 40, they would probably cut right along until it was finished; that he had no knowledge of any of the men attempting to keep an account. The workmen themselves were not called as witnesses, and it is not definitely shown whether they kept accounts of their work for each owner or not. However this may be, no attempt was made to show the amount of labor which each claimant did upon the logs of each separate owner. If a recovery is permissible at all, it must be

on the ground that, the owners having permitted the contractor to put in these logs with labor of which no separate account was kept, they have rendered their property liable as though it were a joint account, or at least that it must bear a proportional share of the expense of the laborers' wages. There is nothing to indicate that the contracts under which the work was let to McCallum contemplated any confusion of the work of the separate owners, unless it be the bare fact of the location of the timber, and this would not justify any such inference. If the case were one where the labor to be performed was *necessarily* to be performed indiscriminately upon intermingled logs, as in case of driving the logs in a stream, there would be room for saying that the charges for labor should be apportioned upon the basis of the number of logs in the stream belonging to each owner. But such was not the nature of the contracts here.

Plaintiff's counsel relies upon the case of *Pack, Woods & Co.* v. *Iosco Circuit Judge,* 70 Mich. 135. In that case the statement of lien alone was considered, and it was held not necessary for the employés to discriminate in their statement of claim between logs which had been indiscriminately intermingled. But it was said:

"It is evident from the reading of the statute that this question is to be determined on the trial, where the rights of the laborer, the contractor, and the log owner may each be fully protected."

And in the case of *Appleman* v. *Myre,* 74 Mich. 359, it was said that—

"The plaintiff, on the trial, has the burden of showing how much, or what proportion, of his labor has been expended upon the logs or lumber of each owner; and, this being ascertained, he may have his lien assessed upon such product for the value of labor expended thereon."

And it was further said:

"The property of one man cannot be taken to pay the debt of another, unless some fact appears showing some privity of contract between them."

In the present case the owners of these logs have not contracted for a service to be indiscriminately performed upon their logs and others. It was entirely feasible for the contractor to keep the operations distinct, and it cannot be assumed that the owners have consented to subject their several logs to liens for labor performed upon logs of other owners. The case is one of hardship to the plaintiff, but we cannot so construe the lien law as to permit the taking of the property of one log owner for labor bestowed upon that of another.

The judgment will be affirmed, with costs.

GRANT, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.