## HUGHES v. HUGHES.

1. LOGS AND LOGGING—LIENS—LOGGING CONTRACTS—PRESUMPTIONS. A contract for the purchase of posts, poles and ties was presumptively entered into with full knowledge of the rights of a camp foreman to a lien on forest products for labor thereon, upon the employers' default, under the log lien law, and to enforce the same, where such contract provided for advances or payments in instalments as the work progressed up to 50 per cent. of the contract price for ties and poles piled at the bank of the landing, to be estimated by the purchaser's inspector, and the remaining 50 per cent. at delivery on board the vessel, all advances to be secured by a "bill of sale on cedar standing or cut on lands from which timber is to be cut," and the posts, ties and poles were marked with the inspector's initials after cutting, some in the woods before any money was advanced, and some on the bank before being watered for driving.

2. SAME—LIENS—NECESSARY PREREQUISITES—JUDGMENTS.

It was incumbent upon the plaintiff in proceedings by attachment under the log lien law (3 Comp. Laws, § 10756 *et seq.*, as amended, 3 Comp. Laws 1915, § 14843 *et seq.*), in order to subject the property of the purchaser of logs, with whom he had no contractual relations, to a lien under the statute for labor, to show himself entitled to, and obtain a judgment against his employer.

3. SAME—LIENS—RIGHTS OF INTERVENING OWNER—VALIDITY.

The intervening owner by purchase of property attached under the log lien law, who appears to contest the validity of a claimed lien for labor has the right, in connection therewith, to contest the amount claimed to be due from the employer, so far as it may have any bearing upon the amount of any lien claimed against his property.

4. SAME—LIENS—EVIDENCE—QUESTION FOR JURY.

Evidence *held*, to present an inference from which the jury might conclude that the poles, ties and posts attached were what plaintiff had worked upon.

5. JUDGMENTS—EVIDENCE—BASIS OF JUDGMENT—CONJECTURE.

Where plaintiff, a camp foreman, furnished no definite data by which the jury could determine and differentiate between the time spent on the purchaser's timber and at other things, a verdict for $893, or $10 less than plaintiff's entire claim, was based upon mere conjecture.

Error to Bay; Coumans, J. Submitted April 13, 1917. (Docket No. 12.) Decided September 27, 1917.

Proceedings by Frank J. Hughes under the log-lien law against John A. Hughes and the W. C. Sterling & Son Company, for work and labor. Judgment for plaintiff. Defendant company brings error. Reversed.

*H. V. Spike* (*M. L. Courtright*, of counsel), for appellant.

*W. A. Collins*, for appellee.

STEERE, J. Plaintiff brought this action by attachment in the circuit court of Bay county under the so-called "log lien law" (3 Comp Laws 1915, § 14843 *et*

*seq.*), to enforce collection of wages claimed due him for services performed while employed by defendant John A. Hughes, his brother, upon certain cedar posts, telegraph poles and railroad ties, which were purchased by the appellant, W. C. Sterling & Son Company. The forest products attached were cut from lands tributary to the Taquamenon river in Chippewa county, and driven down that stream to its mouth, where they were delivered on board vessels to appellant, and by it taken to Bay City.

Appellant contracted the purchase of this cedar from defendant John A. Hughes in February, 1915, while woods operations were under way, agreeing to make advances, or pay instalments upon the output as the work progressed, up to 50 per cent. of the contract price for ties and poles piled at "the bank of landing," to be estimated by its inspector, and the remaining 50 per cent. at delivery on board the vessel; all advances to be secured by a "bill of sale on cedar standing or cut on lands from which timber is to be cut." These posts, ties, and poles were marked by the inspector's initials after they were cut, some in the woods before any money was advanced, and some on the bank before being watered for driving. Under such conditions appellant presumptively made the contract with full knowledge of and reference to the statute giving the laborer a lien upon the forest products he helped to get out, and if the employer failed to pay the laborers for such work, their liens might, if the preliminary statutory steps were taken, be enforced by attachment against such products, in the circuit or justice's courts of any county in the State, in which any portion of them might be situated at the time of commencing attachment proceeding.

Plaintiff was employed by his brother, at the time appellant's cedar was taken out, as camp foreman at $90 per month. After the last boatload of appellant's

cedar had been shipped to Bay City in the fall of 1915, he claimed a balance due him of $925 for labor upon it, extending from the time the camp started in September, 1914, until late in October, 1915. On November 2, 1915, he filed with the clerk of Chippewa county, in which the labor was performed, a statutory statement and claim of lien in due form for work and labor performed in that county in cutting, skidding, handling, driving, etc., said cedar poles, ties, and posts, a portion of them stated to then be in Bay county, the last labor upon them performed October 23, 1915, the amount of wages due and for which a lien was claimed being $925. On November 11, 1915, plaintiff visited the office of Sterling & Son Company at Monroe, Mich. Of his mission and the result he testified:

"I was sent down by my brother to collect the full amount, and on arriving I tried to collect the money, and Mr. Sterling told me that it was impossible, that a $700 order had been sent in by a merchant, and that if he would pay me he would be liable himself for this $700 order, so I told him I didn't have money enough to live on at the time, that I depended upon the money that I was to get from him, so he started to laugh, and he said, 'I won't see you stuck,' so he gave me a check for $50 with the understanding that the minute I was paid by Jack I would refund the money to him."

He then commenced this attachment suit under the statute, in Bay county, to enforce the claim of lien which he had filed in Chippewa county. This, as the law provided, was combined with and contingent on an action and judgment *in personam* against his brother, whom the writ of attachment required the sheriff to summon, wherever he could be found within the State, in addition to attaching the cedar products stated to be "at the yards of W. C. Sterling & Son Company in Bay City, Mich." The brother, defendant John A. Hughes, caused his appearance to be entered and pleaded the general issue, but thereafter inter-

posed no defense, and sent a letter to plaintiff's attorney containing a statement of plaintiff's account, showing that defendant Hughes owed plaintiff Hughes a balance of $925 due for services during a period of employment for 13 months at $90 per month. The letter and statement were admitted in evidence at the trial against objection, in connection with plaintiff's testimony, and a verdict was directed by the court against defendant John A. Hughes under the undisputed evidence for $903.

Before plaintiff could subject the property of appellants, with whom he had no contractual relations, to a lien under the statute, it was incumbent upon him to show himself entitled to and obtain a judgment against his brother, by whom he was employed to do the work for which he claimed a lien.

"Proceedings to enforce a lien upon logs of the owner who is not in contract relations with the lienor, under this statute, assume a double aspect. As to the defendant in the suit, the proceeding is *in personam*, and the judgment obtained is a personal one, while the attachment against the logs of the owner is in the nature of a proceeding *in rem*. It is essential to the validity of proceedings *in rem* that notice shall be given of the time and place of condemnation. What this notice shall be the legislature must prescribe. An opportunity must be given to the owner of the *res* to appear and contest the validity of the lien, and the amount due." *Reilly* v. *Stephenson*, 62 Mich. 509 (29 N. W. 99).

Appellant appeared as intervening owner of the property attached to contest the validity of the claimed lien, having in that connection the right to contest the amount claimed due the brother, so far as it might have a bearing upon the amount of any lien claimed against its property. While objections were made and error is assigned on rulings in connection with that feature of the case, we are not impressed with their

importance, and regard the serious questions involved here to be whether plaintiff has established any valid lien in his favor against the cedar products he attached in Bay county, and, if so, the amount.

Although it was shown that the cedar upon which plaintiff worked in Chippewa county was properly marked, no reference is made to any identifying marks in either the writ of attachment or in the sheriff's return to the writ and inventory, which simply describes the property as "about" 7,000 cedar posts, 4,600 telegraph poles, and 8,000 railroad ties, without any statement of where located, who owned or claimed them, or how they were marked, if at all, and it is contended that a verdict should have been directed for appellant as requested because the record is destitute of any evidence of identification showing plaintiff performed any work upon the property attached. The return is manifestly scant and incomplete. Instead of counsel obtaining leave of the court for the sheriff to amend his return, he was sworn as a witness, and permitted to testify against objection that the cedar he attached was in appellant's yards in West Bay City. It was also shown that the Hughes cedar from Chippewa county brought down by appellant was then in those yards. While meager, we think that in connection with plaintiff's testimony there was inferential evidence upon which a jury might conclude that the cedar attached was that upon which plaintiff had worked.

It was also shown that the amount of cedar attached was worth about $14,000, and the levy concededly excessive. In relation to this there was apparently some agreement, or concession by counsel, not found in the record, as the court said at conclusion of the testimony:

"Let the record show that if a lien is found against the property it shall not exceed $1,200."

As the maximum amount of lien claimed was $875, with interest, the significance of this is somewhat con-

jectural. The jury found plaintiff had "a lien of $893 upon the property described in the declaration, not exceeding in value $1,200." A motion for a new trial on various grounds, including alleged errors in the charge of the court, and that the verdict was contrary to the evidence and excessive, was denied.

When this case was tried in June, 1916, plaintiff was 23 years of age and a resident of Detroit. He testified that in 1914 and 1915 he worked as camp foreman for his brother on the Taquamenon river in Chippewa county, for 13 months at $90 per month, getting out this cedar, and claimed a lien upon it for his full wages during the entire time, deducting only what his brother had already paid, and the $50 given him by appellant at Monroe so he would not be "stuck," as he expressed it, with the understanding that he would refund it the minute his brother paid him. It developed during his examination that during the 13 months of his employment his brother had other woods operations in progress in the same locality, to which plaintiff devoted a portion of his time. He testified that they went into camp on September 23, 1914, and did the preliminary work before starting to cut this cedar; that they ceased cutting in April, which he corrected by the statement, "there was some of that timber cut, if I don't mistake, as late as June," and they broke camp when they finished cutting; that they commenced to drive the timber some time in June, and the drive lasted until shortly before the boat was loaded, owing to the tide from the bay in Lake Superior breaking the booms and working it back and forth, and the last work on the drive was about September 20th, on which date he left for Sault Sainte Marie, and did not return until after the last boat was loaded and gone, It was shown that the drive down the Taquamenon river was only about 12 miles, and the last boat finished loading and left on October 1st.

As to other work he testified on cross-examination that his brother made a contract with two other subcontractors to cut pulp wood, shingle timber, posts, ties, etc., and he was foreman over them; that other cedar was gotten out on the same land, at the same time, by other parties; that a contractor named Bolya got out some cedar for his brother, and some men outside his crew got out some boom timber; that the cedar gotten out by Bolya was mixed with that involved here, and all went down the river in the same drive, but the 275 cords of pulp wood, which he superintended the work upon, was broken in under his direction at a prior time and was taken down by two men in a separate drive; that there were also about 700 pieces of the shingle timber which was not driven, and neither the shingle timber nor the pulp wood belonged to appellant. Of this he further testified:

"About five or six men worked at the pulp wood, and some of the crew that worked in getting out poles, posts, and ties worked on the pulp wood, and they were under my charge, and some of the crew that was under my charge worked in getting out the shingle bolts."

Of the work after they broke camp in the spring he said:

"We couldn't do very much then, only get ready for the drive, and then when the boat would come up we hired men, and when the boat went away we would have to let them go."

Four boats were loaded during the season — two in July; one took part of a load from there in August and the last came in during September, leaving October 1st, at which time plaintiff was absent. In explanation of his absence he stated that his brother sent him to the Soo to try and make his credit good and "keep down" the merchants, who were getting uneasy, so they would send up more supplies for the men

who were going to load the boat. He returned after the last boat had loaded and gone. About two weeks later, and within 30 days before filing his lien, as he states, he did some more work on appellant's cedar by pulling up on the bank some of the posts and ties which had not been taken, and were adrift.

The court instructed the jury that they could not "find for the plaintiff for any time while he was working on other forest products not purchased by the claimant." The jury found a lien of $893 in plaintiff's favor, or $10 less than the entire amount for the 13 months due him from his brother. This was inevitably but a conjecture, for plaintiff claimed a lien for the entire amount, and furnished no dates, days, or definite data by which the jury could determine and differentiate between the time he spent on appellant's cedar and at other things. In *Glover* v. *Lumber Co.*, 94 Wis. 457 (69 N. W. 62), a similar condition arose under a claim of lien for sawing lumber by a plaintiff employed by the month, and shown to have devoted a portion of his time to other work. The court there granted a new trial, saying:

"It is evident that the jury had no testimony before them from which they could determine how much of the plaintiff's time and labor was spent in manufacturing the lumber in question. At best, it could be but a mere guess. The statute gives a lien only for the labor and services performed in manufacturing the lumber. It is plainly the plaintiff's duty to show the amount of such labor and services. Until he does, he is in no position to demand a lien. He cannot leave it for the jury to speculate upon, without evidence. There must be a new trial."

Plaintiff's own testimony shows clearly that a substantial portion of the 13 months he claims to have worked as a camp foreman for his brother was not devoted to work upon appellant's cedar. It was incumbent upon him to definitely show the amount and

value of such services before he could demand a lien. As he left it the jury could only make a random guess.

The judgment of lien is therefore reversed, with costs, and a new trial granted.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.