## Thaddeus G. Smith v. Henry Brown and another.

*Justice's courts: Return day: Waiting an hour: Jurisdiction.* In the absence of any statutory requirement, failure of a justice of the peace to wait an hour after the time specified in the process for the defendant to appear is at most but an irregularity, and not a jurisdictional defect open to collateral attack.

*Variance: Bill to quiet title: Deed: Description of premises.* Under a bill to quiet title, where complainant claims under a sheriff's deed, the objection for variance between the deed and the bill in description of premises, in that the deed, though properly otherwise specifying the lots and the name of the village and plat, omitted the county and state, is held to be without force where by their proceedings both parties have treated such deed as applying to the specific lots in question.

*Fraud: Evidence: Good faith.* Fraud being charged, self-contradictions, vague and partial explanations from witnesses not likely to be well informed, failure to call others presumably acquainted with controlling circumstances, destruction of letters connected with the controversy, and inability, real or feigned, to reveal their contents, are incidents inconsistent with a claim of good faith.

*Fraudulent conveyances: Husband and wife: Execution sale.* A husband having transferred to his wife, pending divorce proceedings between them, certain village lots which the latter occupied as a home, a secret conveyance thereof from the wife back to the husband, made after judgment, and on the eve of execution, against the wife and in favor of her solicitor in said divorce proceedings for the value of his services therein, is held, under the circumstances of this case, to be fraudulent and void as against the levy and sale on such execution.

*Heard June 9.				Decided October 10.*

Appeal in Chancery from Genesee Circuit.

*T. G. Smith,* in person, and *W. Newton,* for complainant.

*Foster & Beebe,* for defendants.

GRAVES, J:

The defendants, being husband and wife, in 1870 were living apart.   He had his residence at Decatur, in Van Buren county, and she hers at Fenton, in Genesee county. He was possessed of considerable property, and among other items owned lots three, four, six, seven, and eight in block two of Wakeman's addition to Fenton.   She occupied these lots, living in a dwelling house standing on lot eight, and having with her three daughters, children of the parties.    Their son Walter, a lad then about seventeen, stayed with his father at Decatur.

In August of that year a decree of divorce from the bonds of matrimony was granted by the circuit court for the county of Van Buren in chancery, in a suit that had been instituted in her name.   No allowance seems to have been made to her in the cause, but about the time of the decree, or shortly after, he gave to her his personal undertaking in writing for one thousand dollars.

In 1872 she employed complainant, who was a lawyer at Fenton, to take steps in her behalf to cause the decree of divorce to be set aside and the bill to be dismissed, and he proceeded to do as she desired, and succeeded.   This occurred in September of that year.     Within a very few days thereafter, and on the 24th of the same month, he filed a bill as her solicitor, in Genesee county, against her husband, for a divorce from bed and board.   The subpœna to answer was issued on the same day, was made returnable on the 12th of October, and was personally served on the first day of that month.    A day or two previous Mrs. Brown had gone to Decatur, and was with her husband at the time of this service.  Immediately after such service Brown drew up a warranty deed to her for the five lots before mentioned, and with her went to Mr. Field, a justice, and there exe-

cuted it, caused it to be attested by the justice and one Myers, and then handed it to her.

It was not acknowledged, but in all other respects was complete.

Immediately, or at least very shortly after this receipt of the deed, Mrs. Brown, accompanied by her son Walter, who went for a visit, returned to Fenton. And on her reaching Fenton, and on the 3d of October, or within a day or two thereafter, she called on complainant and instructed him to stop the divorce case. He asked her reason for so doing, and she replied that her husband had deeded these lots to her. Nearly two months later, and on the 30th of November, Brown filed his answer. No further proceedings were taken in the cause. In about a week after this answer was filed, and on the 7th of December, complainant sued Mrs. Brown before a justice, for his services in these matters. The summons was made returnable December 16th, and was personally served on the 7th. She failed to appear at the time the summons was made returnable, and complainant appeared and proceeded to trial at that time in her absence, and obtained judgment against her for one hundred and twenty-five dollars damages and two dollars and fifty cents costs of suit. No attempt was made to disturb the judgment, and no execution was issued by the justice. About ten days after this judgment Mrs. Brown received from her husband, through the mail, a drawn warranty deed of the foregoing lots from her to him, and which she was desired to execute and acknowledge and return to him.

She accordingly executed and acknowledged it on the 31st of December, and at some time thereafter sent it to him by mail.

On the 5th of February following, complainant caused a transcript of his judgment to be filed in the circuit court, and procured an execution to be issued thereon. The sheriff levied on lots three, four, six, and seven, block two, of Wakeman's addition to the village of Fenton, according to the recorded plat thereof, and in due time the same were sold

to complainant and afterwards deeded to him by the sheriff for want of redemption.    He then obtained possession by summary proceedings, and Brown brought ejectment against him.    Thereupon he filed the present bill, alleging that Mrs. Brown acquired the title by the first deed, and that the second transaction was fraudulent as against him.    Mrs. Brown made no appearance, and allowed the bill to be taken as confessed as to her.    But her husband answered, and proofs having been taken, the court below granted relief, and Brown appealed.

He makes three objections to the decree:

*First,* That the judgment against Mrs. Brown was void;

*Second,* That the sheriff's deed relied upon does not describe the premises referred to in the bill;

*Third,* That in the transaction covering the giving of the two deeds no fraud was meditated or committed against complainant or any other creditor.

The ground of the first objection is, that the transcript of the justice did not express that he waited one hour for the defendant to appear.    The statute does not specify that the justice in case of personal service shall wait at all for the defendant after the arrival of the hour for appearance stated in the summons.

It is the general and very proper course no doubt in such cases to wait a reasonable time for the defendant, and which, by analogy to the time fixed for waiting for the plaintiff, is commonly taken to be an hour.    The prevalence of the practice has been owing in some degree most likely to the course in New York.    But there the rule is settled by statute, and the justice is required to "wait one hour after the time specified for the return" "unless the parties shall appear sooner."    This, of course, gives equal indulgence.— *2 R. S. 1830, p. 233, § 46.*

*Shufelt v. Cramer, 20 J. R., 309,* cited by defendant's counsel, and which was prior to the statute, contained a *dictum* that the justice was then bound to wait an hour for the parties, or rather a reasonable time.    That was not

the point decided, however, and it was not one which the case involved.    There the justice had waited an hour for the plaintiff and had then entered judgment of non-suit against him.    He sought reversal of the judgment by *certiorari* on the ground that he was entitled to greater indulgence than had been given him, but the court thought he had no cause to complain, and affirmed the judgment.

The only question was, whether, in the absence of any statutory regulation about it, the plaintiff could claim that the non-suit entered after waiting an hour was prematurely entered, and the court decided he could not.    Granting, however, but not deciding, that regularly the justice ought to wait an hour for the defendant to appear, still his omission to do so, if shown or assumed, could at most amount to error.

It would not be a fault affecting jurisdiction, and hence not one subject to be taken advantage of collaterally.

The second objection has nothing to support it except that in the sheriff's deed there were no express words that the lots were in the county of Genesee, and state of Michigan.    There is no force in this.    The description is not ambiguous on its face.    It purports to denote the parcels ·in dispute, and by their proceedings both parties have conceded that it applies to them.    There is no ground whatever for saying that the premises pointed out by the deed are not identical with those referred to in the bill and answer and other proceedings.    The point is not worthy of serious comment.—See *Russell v. Sweezey, 22 Mich., 235, and cases; Noonan v. Lee, 2 Black, 499; Deery v. Cray, 10 Wall., 263; McChesney's Lessee v. Wainright, 5 Ohio (Hammond), 452.*

The last objection is more important.    Looking at the shifts which were made between these parties and the indications afforded by the open facts, the inference would be that there was a design to screen the land from complainant's claim, and if this was not the case and the transaction was fair and honest, it was in Brown's power to afford

explanations by answer and evidence, not only harmonious, but convincing on the question of good faith. And his situation required this of him. Self-contradictions, vague and partial explanations from witnesses not likely to be well informed, failure to call others presumably acquainted with controlling circumstances, destruction of letters connected with the controversy, and inability, real or feigned, to reveal their contents, are incidents inconsistent with a claim of good faith. And we have all these in the defense. The answer sets up that Mrs. Brown held his note for one thousand dollars, and that it was agreed between them that he should deed this land to her for this note; that she resided at Fenton and he at Decatur, and that in virtue of this agreement he sent the deed to her to be accepted on condition of her sending back the note. The answer thus separates the parties at this juncture in order to strengthen the position that the deed was not actually delivered at all, but was sent, and that the act of sending was so qualified as to hinder it from eventuating in delivery as a conveyance. It is then claimed that she did not return the note and that the transaction was canceled by her return of the deed, and that the deed from Mrs. Brown to him, the last of December, was given and received to make the withdrawal from the agreement to deed the land for the note final and complete.

Now, when on the stand as a witness, Brown testified positively that his wife was present at Decatur when the deed of October 2d was prepared, and that he did not send it to her at Fenton, but passed it directly into her hands at Field's office. Again, the bill against him for a divorce from bed and board insisted upon an ample allowance, and when he came to make answer on the 30th of November, being nearly two months after his deed to his wife, he set up as defense against an allowance, that by the deed in question he had conveyed to his wife the lots described in it and now in dispute. Moreover, this conveyance is there represented as made by way of separate provision and in addition to the note, and there is no hint that it was

intended to satisfy the note or to be in lieu of it.    And, finally, it appears from his own testimony that this personal obligation was actually surrendered to him a few weeks later without any consideration therefor and was thereupon destroyed.   It is scarcely needful to refer to all the repugnant colorings and all the inconsistencies which appear in the attempt to state and substantiate a theory favorable to the good faith of the transaction.

His personal explanations, when compared with each other and with conceded facts, do not conciliate confidence, and the circumstance that letters between himself and wife, and which he gives reason to suppose contained material evidence, were destroyed or suppressed, and his assumed inability to recollect any of the contents, or even the substance, must necessarily weigh against him.

He called his son and one of his daughters, but their testimony was vague and indecisive.

There is nothing to make it probable that they were in a situation to know any thing concerning the real cause for the return of the first deed, and for the conveyance by their mother.

Mrs. Brown, however, must have had full knowledge, and Field most likely knew something, and yet he called neither of these persons.    They were competent, but no reason is even insinuated for not producing them.    The inference is forced upon the mind that the omission was not an inadvertence, but was designed, and that the ground of their not being called was an understanding that the state of facts to which they could depose, and would undoubtedly reveal, would be detrimental to the claim of good faith set up by Brown, and sought to be made out by his testimony and the recollection of his son and daughter of remarks made in their presence by the father and mother. On the whole, the scheme of the defense as drawn in the answer, and the course of the defense and the facts closely connected with it, the situation and relations of the parties, the contradictory accounts, the destruction of letters, the

claim of inability to give their contents or the substance, the vagueness of Brown's testimony in regard to the times of getting back the deed he gave, and of receiving the deed made by his wife, and in regard to several other incidents, naturally and inevitably lead to an opinion that the transaction assailed by the bill is not open to explanation as a fair and upright one, and that in truth the real purpose was to screen the land from complainant's debt.    Consequently the last objection to the decree cannot prevail, and the result is, that the determination below must be affirmed, with costs.

The other Justices concurred.