### ALMIRA MERWIN v. JOHN HAWKER.

1. ATTACHMENT; *Irregular Writ; Sale Not Vitiated.* Where in an attachment against a non-resident, after service by publication and without any appearance, judgment is rendered against the defendant; and upon such judgment a writ is issued, which instead of being simply an order of sale, is a command to satisfy the judgment out of any goods and chattels of defendant, and for want of goods and chattels out of the specific real estate attached in the action, and on such writ a portion of the said real estate is sold: *Held,* That while the form was irregular, yet the irregularity was not sufficient to avoid the writ, or vitiate the sale made under it.

2. ————— Generally speaking, neither the process nor the action taken under it will be adjudged void, when the very thing which ought to be done is specifically commanded, and only that thing is in fact done.

3. JUDGMENT FOR COSTS, *Enforced.* Where in an attachment action the judgment is for the recovery of so much money and the costs of the action and the sale of the attached property, the judgment for costs is a lien on the attached property, and may be enforced by an order of sale.

4. DEFECTS, *Not Subject to Collateral Attack.* Where the attachment was levied on a quarter-section of land, which tract was appraised as a whole, and on process thereafter for the collection of the judgment for costs one quarter of said quarter-section was levied upon and separately appraised and sold, said last-mentioned tract being amply sufficient to satisfy such judgment, *held,* that neither the failure to sell the entire tract taken on the attachment order, nor the subsequent appraisement of the one-fourth part by itself, nor the sale conformably to such last appraisement, was a defect which could be taken advantage of in a collateral action.

5. COSTS—*Amount Stated in Execution Presumed Correct.* Where an execution is issued reciting a judgment in favor of the plaintiff for so much costs, and on this execution a sale is made to a stranger to the action, *held,* that his title will not be defeated by the mere fact that the journal entry of the judgment fails to state the amount of costs taxed. In the absence of the appearance and judgment dockets it will be presumed that the costs were properly taxed on them, and that the amount stated in the execution is correct.

### *Error from Saline District Court.*

EJECTMENT, brought by *Merwin* against *Hawker.* Trial by the court upon an agreed statement of facts, at the May Term, 1883, and judgment rendered for the defendant. The

plaintiff brings the case here.  The opinion contains a sufficient statement of the facts.

*Garver & Bond,* for plaintiff in error.

*John Foster,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of ejectment, brought by plaintiff in error, plaintiff below, to recover the possession of the northeast quarter of the northwest quarter of section thirty-five, township fourteen, range four, in Saline county. The case was tried by the court without a jury, upon an agreed statement of facts, and judgment rendered thereon in favor of defendant.  The facts are these: In 1874, C. W. Bates owned the northwest quarter of said section thirty-five. In March of that year a suit was commenced against him in the district court of Saline county, and being a non-resident, jurisdiction was obtained by attachment of said quarter-section, and service made by publication.  No other service was had, and no appearance was made by said Bates in the action.  When attached, the quarter-section was appraised at $480, and the appraisement duly returned with the order of attachment.  In May, 1874, a judgment was rendered in favor of the plaintiff and against said Bates for the sum of $514.70 and costs, and the sale of the attached property.  The journal entry of judgment reads as follows:

"It is therefore considered by the court, that the said plaintiff recover of the said Charles W. Bates, principal, and John F. Randolph, surety, the said sum of five hundred and fourteen dollars and seventy cents, and also his costs in and about said suit in his behalf expended, taxed at $——; and on motion of the said William F. Parker, by Spivey and Wildman, his attorneys, it is ordered that the said sheriff proceed as upon execution to advertise and sell so much of the real property heretofore attached in this action, now in his hands remaining, as will satisfy the said plaintiff of his aforesaid judgment and costs."

It will be seen that in this journal entry the amount of

costs is not carried out. What entries were made on the judgment or appearance docket in respect to the costs is not shown. (See Code, §§ 703, 704, 706.) In September, 1874, Bates conveyed the land to the ancestor of plaintiff. In March, 1877, no prior writ having issued, one August Bondi, who had been the clerk of the court at the time of the above-mentioned proceedings, and who had costs due him in said case, ordered the then clerk, Nels Peterson, to issue an execution for the collection of the costs therein. An execution was accordingly issued. This execution, after reciting the judgment for costs, contained this command:

"These are therefore to command you, that of the goods and chattels of the said Charles W. Bates and John F. Randolph, you cause to be made the $16.90, debt, damages and cost aforesaid; and for want of goods and chattels you cause the same to be made out of the lands and tenements of the said Charles W. Bates and John F. Randolph, to wit, the real property heretofore attached in this action, to wit, the northwest quarter of section thirty-five," etc.

Under this execution the sheriff levied upon the north half of the northwest quarter of said section 35, caused it to be appraised in two separate tracts, to wit, the northeast quarter of said northwest quarter of section 35 at $200, and the northwest quarter thereof at $160. The property thus levied upon was offered for sale, but not sold for want of bidders. Thereafter, in July, 1877, a second execution was issued for the same costs, and under such execution the property in controversy was sold to one J. M. Greeley. The sale was confirmed by the court, and thereafter Greeley conveyed to defendant. If by these proceedings the title was transferred and vested in defendant, the judgment was right; otherwise the plaintiff was entitled to a recovery.

Upon these facts counsel for plaintiff states that two questions are presented for consideration, namely: First, the judgment not being a personal one, could execution be issued and a levy and sale be made under it, which would convey the title to real estate which was vested in the judgment debtor at date of the judgment, but not at the time of the

levy? Second, if the execution and subsequent order can be held as a substitute and equivalent to the order of sale authorized by the judgment and attachment, is the sale valid, appearing, as it does, to have been made regardless of the attachment appraisement?

We think the questions as stated by counsel need to embrace some other facts, in order to present the real questions involved in the case. It may be conceded that the judgment, being based upon service by publication in an attachment action and without any appearance on the part of the defendant, bound only the property attached; but it bound that property, and bound it, not from the time of sale or the time of judgment alone, but also from the time of the levy of the attachment. And it bound it, not merely for so much of the judgment as was for the debt, but also for that portion of it which was for costs. The judgment fixed the lien, which related back to the levy of the attachment, and fixed it so that it could not be disturbed by any action on the part of the defendant alone. At the time, therefore, of the issue of the first execution, there was a lien by attachment and judgment for costs on the specific quarter-section attached. Now the execution which was then issued was unquestionably irregular. It should have been simply a command to sell the attached property, and not, as it was in form, a command to satisfy the judgment out of the goods and chattels of defendant, and for want thereof out of the specific property seized on the attachment. The first command in this execution was unauthorized, but nothing was done under it; and therefore its presence in the writ does not vitiate the remainder, which contained the command that should have been made. It can be treated as mere surplusage. It is true the form of the last command should properly have been to sell the property attached and apply the proceeds in satisfaction of the judgment, whereas it in fact read to make the debt, damages and costs out of such property. But so far as any question can arise in this case, we think the difference is only an irregularity which cannot be taken advantage of in

any collateral proceeding. We shall have something more to say about this when we come to consider the question of the second appraisement; for the present it is enough to say that, at the time of the issue of the first execution, there was a perfect lien for the costs of that action on the real property attached, and that the execution commanded the officer to subject that real estate to the payment of such lien. It may be laid down as a general rule, that where process contains the specific command which it ought to contain, and where the thing specifically commanded is the only thing done by the officer, such process will be sustained although it contains other and improper commands. Such other commands, not being obeyed by the officer, will be treated as surplusage. (*Pracht v. Pister*, 30 Kas. 568.)

So far as the other question stated by counsel is concerned, it appears that the entire quarter-section was attached and appraised. When the execution was issued a levy was made only on the half of this property, and it was separately appraised. By the code, § 222, a judgment in attachment is to be satisfied by the sale of so much of the property attached as may be necessary. Now although the entire quarter-section was taken under the attachment, it would have been manifestly unjust, as well as contrary to the clear requirements of said section, to have sold it all to satisfy a little matter of costs. And if only a portion of the tract is to be subjected to sale, that portion should be separately appraised in order that the court may see that it is not sacrificed. Hence whatever might be the rule in respect to a second appraisement when the whole property attached is offered for sale, (and of that we need not now stop to inquire,) it is manifest that there was no impropriety in appraising that portion of the whole tract which was in fact offered for sale and sold. At most, this was but an irregularity which could have been corrected alone on motion, and cannot be taken advantage of in a collateral attack.

The only other matter which we deem necessary to notice is, that in the journal entry of judgment the amount of the

costs is not stated, a blank being left for the amount.    This
blank of course ought to have been filled. (Comp. Laws 1879,
ch. 80, § 593a.)    But inasmuch as on the appearance and
judgment docket are required to be entered the costs, and as
these dockets were not introduced in evidence, we think it
must be presumed that the costs were properly taxed, and
therefore that an execution to recover them was not void.
(*Linton v. Housh,* 4 Kas. 535.)

There being nothing else requiring notice, the judgment
will be affirmed.

All the Justices concurring.