THE GRAND RAPIDS CHAIR COMPANY v. ALLICK G. RUNNELS, SHERIFF OF NEWAYGO COUNTY.

*Replevin—Log lien—Service of process—Return of officer—Constitutional law—Illegal taxation of attorney fee invalidates judgment only in that amount—Justices of the peace —Effect of failure to wait one hour after return-hour for appearance of defendant—Docket entries—Log-lien law of 1887—Affidavit for attachment under— Irregularities in execution under.*

1. Where a purchaser of standing timber, the title to which was retained by the land-owner until the purchase price was paid, sold the logs to a corporation, which acquired all of his interest in the same before the logs were attached at the suit of his workmen under the log-lien law, and notice was served on the corporation, but not upon the land-owner, who had not *then* been paid for the timber, and, after making such payment, the corporation replevied the logs from the sheriff, the failure to serve notice upon the land-owner will not defeat such lien proceedings in the replevin suit.

2. A return of service of process upon "Charles C. Comstock, as president of the Grand Rapids Chair Company [a corporation], *who* is the owner of said goods and chattels described in within writ," sufficiently shows a service upon the corporation, to which the word "who" may be treated as relating, and not to Comstock.

3. Act No. 147, Laws of 1887, which provides for the taxation of a $5 attorney fee in favor of the plaintiff in a suit to recover for personal services, is a part of his costs, is unconstitutional and void. *Wilder v. Railway Co.*, 70 Mich. 382 (head-note 3).

4. The illegal taxation of an attorney fee in a log-lien suit, under Act No. 147, Laws of 1887, will not invalidate the judgment, nor interfere with the lien, except in so far as the illegal excess of costs may reduce it in amount.

5. An affidavit for an attachment under the log-lien law (Act No. 229) of 1887 need not state who is the owner of the logs upon which a lien is claimed. *Babcock v. Cook*, 55 Mich. 7; *Shaw v. Bradley*, 59 Id. 199; *Reilly v. Stephenson*, 62 Id. 509, 515.

6. It was not decided in *Mudge v. Yaples*, 58 Mich. 307, *Post v. Harper*, 61 Id. 434, *Noyes v. Hillier*, 65 Id. 636, or *Wedel v. Green*, 70 Id. 642, that the failure of a justice of the peace to wait one hour after the return-hour of process for the appearance of the defendant would void a judgment in favor of the plaintiff where sufficient service had been made or notice given, and the docket showed due appearance by the plaintiff.

7. In *Bossence v. Jones*, 46 Mich. 492, which was a *direct* proceeding to review a judgment, it was held that a justice of the peace must wait one hour for the appearance of the defendant after the time fixed for hearing, in all cases in which the plaintiff was allowed that time by statute. But it had been held in *Smith v. Brown*, 34 Mich. 455, that, as there was no statutory requirement for such waiting, a failure to do so was at most but an *irregularity*, and not open to collateral attack.

8. Where due service of attachments in 19 log-lien suits against the same debtor and logs was made upon the debtor, who appeared at the return-hour,—which was the same in each case,—and joined issue in each suit, and the log-owner did not appear, although duly served with notice of such attachments, the failure of the justice to wait one hour after the return-hour before proceeding in said suits will not invalidate the judgments rendered therein, in a replevin suit by the log-owner against the sheriff who had levied upon the logs under executions issued on said judgments.

9. An attachment issued by a justice of the peace in a "log-lien suit" brought under Act No. 229, Laws of 1887, may be served by the sheriff of the county where the attachment is issued upon the log-owner in any county in the State, and where such log-owner is a corporation, service upon its president is sufficient notice to the corporation.

10. An affidavit under the "log-lien law" of 1887 which alleges that the labor was performed in "cutting, skidding, hauling,

*chopping*, sawing, *swamping*, *loading*, and falling the logs (timber) upon which a lien is claimed, is sufficient; "chopping" being included n "cutting," and "loading" being a necessary part of "hauling," and "swamping" belonging to the work of "skidding" said logs.

11. An affidavit in a "log-lien suit" under Act No. 229, Laws of 1887, which fails to state by whom the labor was performed for which the recovery is sought, is defective; but such defect will not invalidate a judgment for a return of the logs in favor of the sheriff, who had also levied upon them under executions issued upon judgments in favor of several other lien-holders, whose affidavits were not so defective, but it will reduce the amount of his lien in the amount of the judgment in the case where the affidavit is so defective.

12. We are not prepared to hold that the failure of a justice of the peace to note on his docket the time of issuing an execution, and to whom delivered, or the fact that it was issued, will vitiate an execution actually and properly issued by the justice, and delivered to the sheriff.

13. After the levy of an execution issued upon a judgment in a log-lien suit brought under Act No. 229, Laws of 1887, upon the logs, and the posting of notices of sale, the officer holds the property under such levy, and not under the prior attachment.

14. An execution issued under the log-lien law of 1887, and delivered to the same officer who served the writ of attachment, which recites the fact of the rendition of the judgment, and that it is for work and labor performed upon "a certain lot of red and white oak saw-logs, as mentioned in plaintiff's declaration," and commanding the officer to levy the damages, etc., of the goods and chattels of the *debtor*, naming him, "namely, the above-described logs," sufficiently points out to the officer the logs held under the attachment levy.

15. Where in *such* a case the officer levied said execution upon the identical logs he had attached in said log-lien suit, and was proceeding to a sale to satisfy said judgment when the owner of the logs replevied them, the omission from the execution of a command to make such sale is an irregularity which cannot be taken advantage of in said replevin suit

Error to Newaygo. (Palmer, J.) Submitted on briefs April 19, 1889. Decided October 25, 1889.

Replevin. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Butterfield & Keeney,* for appellant, contended as stated in the opinion, citing the authorities therein referred to and reviewed.

*Andrew Hanson,* for defendant.

MORSE, J.  The questions in this case to be determined grow out of proceedings under Act No. 229, Laws of 1887, known as the "Log-lien Law." It was agreed by the contending parties in the court below that there were no issues of fact to be submitted to the jury, and thereupon the circuit judge of the Newaygo circuit directed a verdict in favor of the defendant. The action was in replevin, and the defendant took judgment for the return of the property, which consisted of 898 red oak and white oak logs, valued by the appraisers at $750.

The facts developed on the trial were these: At the time this suit was commenced, and at the time the logs were cut, Lyman T. Kinney, of Grand Rapids, Michigan, owned the lands upon which they grew.  On September 17, 1887, he entered into an agreement in writing with one John G. Gunsolus, by which he sold all the red oak and white oak timber upon these lands to Gunsolus, said timber to be removed on or before April 1, 1888.  The timber was to be paid for before it was loaded on the cars for shipment, at the rate of $4 per 1,000 feet stumpage, Doyle's scale.  It was agreed that the title to the timber should remain in said Kinney until it was paid for.

Gunsolus contracted the logs to be cut upon these lands to the Grand Rapids Chair Company, and made a contract with one Willard B. Lyons to cut and put them in.  The logs in issue here were cut in the winter of 1887 and 1888, and, when taken under the writ, were at or near Field station, so called, on the east side of the spur or side track of the Chicago & West Michigan Rail-

way Company, in the township of Wilcox, in the county of Newaygo.

Lyons became unable to pay all his men in full, and, on March 6, 1888, William Clark and eighteen other men, who had been employed by Lyons in getting out these logs, filed their liens with the county clerk of Newaygo county, and on the same day each made an affidavit before Samuel M. Reed, a justice of the peace of said county, and thereby commenced under the statute nineteen different suits against the logs and Willard B. Lyons. The writs of attachment were put in the hands of the defendant, Runnels, sheriff of Newaygo county, who on the same day levied upon the logs and served a certified copy of each writ upon Lyons. He also returns in each case that on March 9, 1888, he—

"Served at the city of Grand Rapids, Mich., a certified copy of within writ on Charles C. Comstock, as president of the Grand Rapids Chair Company, who is the owner of said goods and chattels described in within writ."

The justice's docket shows in each case that the writ was returnable March 14, 1888, at 9 o'clock A. M., at his office in the township of Wilcox. After reciting the substance of the sheriff's return as above, the docket proceeds:

"Case called at 9 o'clock A. M. Plaintiff appeared in person, and by A. Hanson, as his attorney, and filed a written declaration. Defendant appeared in person, and pleaded the general issue. Both parties announced themselves ready for trial, and proceeded to try the cause. After hearing the testimony, and after due deliberation, I, Samuel M. Reed, as justice, say that there is due the plaintiff the sum of " (being in each case the amount due from Lyons to the plaintiff for labor performed in getting out the logs) "from said defendant; and that the same is due for work and labor performed by the plaintiff in skidding, cutting, hauling, loading, and chopping a certain lot of red and white oak saw-logs, as mentioned

in plaintiff's declaration; and that the plaintiff has a lien upon said described property for said amount."

The judgment in each case was for the amount of labor so found, and $15.05 costs; $5 of such costs being for the attorney fee authorized by such act. Executions upon each of these judgments were issued and placed in the hands of said sheriff March 19, 1888. Levy was made on the logs under these executions.

The secretary of the plaintiff company demanded these logs of the sheriff, and upon his refusal to deliver them the plaintiff brought this action in replevin.

For the consideration of one dollar, "to him in hand paid," Lyman T. Kinney, on March 29, 1888, assigned his title in and claim to said logs to the plaintiff. It seems also that the company had acquired Gunsolus' interest in the logs before the lien proceedings were instituted. The secretary of the chair company testified that Kinney had not been paid in full for the logs on March 6, 1888, when the lien proceedings were instituted, and Kinney testified that he was the owner of them on that day. No notice of the lien proceedings were given to Mr. Kinney.

It is urged, as the first and most serious objection to the judgments in these lien cases, that Kinney, being the owner of the logs at the time these suits were commenced, was entitled to notice of the proceedings, and as he had none, either actual or constructive, the judgments, as far as the logs are concerned, are invalid and void for want of jurisdiction, and therefore, there being no valid lien upon them, the plaintiff, at the time of the commencement of the replevin suit, being the owner of them, was entitled to the possession of them, and the verdict and judgment should have passed in its favor. To this the defendant replies that the Grand Rapids Chair Company was the owner of these logs, and that

notice was given such corporation by service upon its president.

I think, under the circumstances of this case, that Mr. Kinney was not entitled to notice. If the proper notice was given to the Grand Rapids Chair Company it was sufficient. This plaintiff corporation was in reality the owner of these logs. It hired Gunsolus to put them in, and had acquired all his interest before the lien proceedings were commenced. It is true that Kinney reserved the title to them until they were paid for; but he was paid for them before this replevin suit was instituted, and no rights of his appear to ever have been jeopardized by the attachment and seizure of the logs under the attachment. The Grand Rapids Chair Company claimed that the logs were in transit to them at the time the sheriff seized them, and their secretary so testifies. They had notice of the proceedings, as there is no dispute but Comstock was the president of the corporation when service was made upon him. There can be no good reason for defeating these liens upon a mere technicality which injures no one. The title which Kinney had in these logs, if he had any that he could assert, was one depending on a contingency which did not happen, or rather held as a security against the happening of non-payment. As the matter stands Kinney has no concern, and never had, with these liens. The real party affected now, and at all times heretofore, by them is the plaintiff in this suit.

It is claimed, however, by plaintiff's counsel that the return of the sheriff does not show the service of any process upon plaintiff. It shows a service on—

"Charles C. Comstock, as president of the Grand Rapids Chair Company, who is the owner of said goods and chattels described in within writ."

It is argued that by the word "who" a service is shown

on Comstock personally, not on the company. We think the return sufficient. It shows that it was served upon him "as president," etc., and the word "who" can well be treated, as it was no doubt intended, as relating back to the chair company, and not to Comstock. It is not best to void the sheriff's return and thereby nullify the whole proceedings in 19 suits by hair-splitting.

The judgments in the lien cases are next attacked. It is claimed that they are illegal and void for the following reasons:

1. Because of the taxing in each case of an attorney fee of five dollars.

2. There are no allegations in the affidavits for the writs as to the ownership of the logs.

3. The docket of the justice shows that he proceeded to trial at the return-hour of the writs, without waiting one hour for the owner of the logs to appear.

4. The sheriff was not authorized to serve the process outside of Newaygo county.

5. The proceedings were brought for labor and services not mentioned in or contemplated by the statute.

In relation to the first objection, it must be held that the taxing of the attorney fee of five dollars in each of these cases was illegal. Such attorney fee is unauthorized, for the reason stated in *Wilder v. Railway Co.*, 70 Mich. 382 (38 N. W. Rep. 289); *Schut v. Railway Co.*, Id. 433 (38 N. W. Rep. 291); *Lafferty v. Railway Co.*, 71 Id. 35 (38 N. W. Rep. 660). It was imposed in the lien cases under the authority of Act No. 147, Laws of 1887, p. 160, which is an act amending the Laws of 1883. Whether or not the attorney fee given by this Act No. 147 would apply to lien proceedings is not material, as the act itself, under the decisions above cited, must be considered as unconstitutional and void. But this illegal taxation of costs does not invalidate the judgments, nor interfere with the liens, except in so far as the illegal excess of costs may reduce the amount of such liens.

I do not think the second objection is tenable. As well said by COOLEY, C. J., in *Babcock v. Cook,* 55 Mich. at page 7 (20 N. W. Rep. 692), the statute neither expressly nor by implication requires that the affidavit shall show who is the owner of the logs.

" On the contrary, it supposes there may be cases in which the owner will be unknown, and the form given for the writ contains a command to the officer to make service upon the owner, if he is known to the sheriff and resides in the State." See Laws of 1887, pp. 283, 284; *Reilly v. Stephenson,* 62 Mich. 509, 515 (29 N. W. Rep. 99); *Shaw v. Bradley,* 59 Id. 199 (26 N. W. Rep. 331).

In support of the third objection the following cases are cited and relied upon by counsel for plaintiff: *Noyes v. Hillier,* 65 Mich. 636 (32 N. W. Rep. 872); *Post v. Harper,* 61 Id. 434 (28 N. W. Rep. 161); *Mudge v. Yaples,* 58 Id. 307 (25 N. W. Rep. 297); *Wedel v. Green,* 70 Id. 642 (38 N. W. Rep. 638).

We do not think these cases applicable to the case at bar. In *Mudge v. Yaples,* it did not appear from the docket entry what day or hour the plaintiff appeared and took his judgment. While in that case it was held that it might be inferred from the docket that the judgment was taken on the return day of the writ, yet the hour did not appear, and it was said:

" The statute specifically requires the time of the appearance of the parties to be entered, and for good and obvious reasons, and such an omission is a jurisdictional defect. See *Redman v. White,* 25 Mich. 523. We consider the hour of the appearance as necessary to be entered as the day. A judgment rendered by a justice in favor of the plaintiff before the return-hour of the summons, without the consent or appearance of the defendant, or when the plaintiff has failed to appear within one hour thereafter, is void."

In *Post v. Harper* the docket did not show at what hour the plaintiff appeared, and, while it showed that the

plaintiff appeared on the adjourned day, and waited one hour, and the defendant did not appear, the hour of plaintiff's appearing not being stated in the docket, it did not therefore show that the plaintiff appeared *within one hour* after the time to which the case was adjourned, to wit, 1 o'clock P. M.    For aught that the docket showed, he might have appeared at any hour in the forenoon of the adjourned day and waited one hour.

In *Wedel v. Green* it did not appear at what hour the plaintiff appeared and took judgment, and the case was governed by *Mudge v. Yaples* and *Post v. Harper*.

In *Noyes v. Hillier*, which was a log-lien case, one Wright H. Obear was named as defendant in the affidavit for the writ.    Service was made upon him the day after the writ issued.    Service was also made upon one Edwin C. Beecher as agent of Noyes, who was the owner of the logs, on the return-day of the writ.    On the same day the plaintiff filed a written declaration against Obear, and at the return-hour, 10 o'clock in the forenoon, the justice called the suit, and proceeded at once to trial, and rendered judgment in the absence of both Obear and Noyes, and without the appearance of either.    His docket did not show that he waited one hour, although he returned that he did.    We held that it appeared presumptively that he did not wait, but proceeded at once to trial, and that his return could not aid his docket entry, nor remove the presumption of the entries in his docket.    We did not hold, however, that the judgment was not good as against Obear, who had proper service of notice, but as against the owner of the logs, or as affecting the logs, we held the judgment invalid for the reason that when the service was made on the owner on the return-day of the writ the justice could not proceed at once, at 10 o'clock in the morning, to trial, as it did not

give the owner reasonable notice and reasonable opportunity to appear and defend the cause.

In none of these cases, as will be seen by this review of them, has it been decided that the failure to wait one hour after the return-hour for the defendant, in a case where sufficient service had been made or notice given would void a judgment in favor of the plaintiff. But in *Bossence v. Jones*, 46 Mich. 492 (9 N. W. Rep. 531), it was decided that a justice must wait for a full hour for the appearance of the defendant after the time fixed for hearing, in all cases in which the plaintiff is allowed that time by the statute. This was upon a direct review of the judgment, in this Court, upon writ of error from the Lapeer circuit. It was, however, held in *Smith v. Brown*, 34 Mich. 455, that, as there was no statutory requirement that the justice should wait an hour, or any time after the return or adjourned hour, for the defendant, a failure to so wait was at most but an irregularity, and not a jurisdictional defect,—not open to collateral attack. In that case it was said:

"Granting, however, but not deciding, that regularly the justice ought to wait an hour for the defendant to appear, still, his omission to do so, if shown or assumed, could at most amount to error. It would not be a fault affecting jurisdiction, and hence not one subject to be taken advantage of collaterally."

In the case at bar the attack upon these judgments is a collateral one, and therefore would seem to come within the ruling in *Smith v. Brown, supra*. It must also be remembered that in this case the defendant, Lyons, appeared and was ready for trial, and that after the case was called the pleadings were filed, which of course consumed some time. The Grand Rapids Chair Company was notified on March 9, 1888, by service of a certified

copy of the writ of attachment upon its president, five days before the return-day,—a reasonable notice. Only one of the judgment or docket entries is given in the printed record, but it is stated that the whole of the docket entries in the 19 cases are annexed to the bill of exceptions; that—

"The nineteen suits were contemporaneous in point of time, and were identical as respects the conduct thereof, and, inasmuch as the papers in the various suits are intended to pursue the same form, and do pursue the same form, so far as all the questions raised at the trial are concerned, we print only one set, the papers in the suit of William H. Clark, which is the first suit appearing on the docket of the justice."

An examination of the copy of the docket entries in each case, as they appear in the manuscript record, shows that all of them were called at 9 o'clock A. M., declaration filed in each by A. Hanson, attorney for plaintiff, and a plea by the defendant, Lyons, and testimony then taken in each on the issue thus made. Before all or many of these cases could have been disposed of an hour must have elapsed. It would therefore seem that the Grand Rapids Chair Company, if it had put in an appearance at the justice's office within the hour, would have had a chance, had it so desired, to have defended some of these nineteen suits. It is evident that the fact that the justice did not wait until 10 o'clock A. M. before trying any of these suits did not prejudice the plaintiff in this case at all, because it did not appear, and would not have appeared, within the hour, had the justice so waited.

The fourth objection is that the sheriff had no authority to go out of Newaygo county to make service upon the plaintiff or upon Comstock, its president. It is claimed that the sheriff had no greater power in this respect than a constable, and that a constable is a local officer, whose

authority to serve process does not extend beyond the limits of his own bailiwick. How. Stat. § 765. The act of 1887, § 6, at page 280, expressly provides that—

"Such attachment or other process issued out of said courts [circuit or justice courts] of this State, in pursuance of the provisions of this act, may be served in any county of this State, and, if the defendant in said attachment is not the owner of the property or products described in said writ, then the officer executing said writ shall serve, or cause to be served, a copy of said attachment on or before the return-day mentioned in said writ upon the owner of said products, or any of them, their proper agent or attorney, if such owner, agent, or attorney be known to him, and residing in this State."

It is also intimated in *Babcock v. Cook*, 55 Mich. at page 7 (20 N. W. Rep. 692), that the command in the writ to the officer to make service on the owner, if he is known to the sheriff and resides in the State, is a proper one. We have no doubt of the right of the sheriff to serve a copy of the writ upon Comstock at Grand Rapids; and such service was sufficient notice, under the law, to plaintiff.

Under the fifth objection, it is claimed that the docket of the justice and the other proceedings show that the actions under the lien law in this case were brought to recover for swamping, loading, and other services not mentioned in the statute. The affidavits were objected to on the ground that the services mentioned therein were not the kind of services mentioned in the statute. The same objection was made to the declarations, and it was also objected that the justice did not find that the services performed were of the kind stated in the law. These objections were overruled, and error is assigned thereon. The statute gives a lien to laborers "cutting, skidding, falling, hauling, scaling, banking, driving, running, rafting, or booming any logs," etc. The affidavits allege that the labor was performed "in cutting, skidding,

hauling, *chopping, sawing, swamping, loading,* and falling." It would seem that "chopping" was included in "cutting," and "loading" would be a necessary part of the "hauling," and "swamping" belongs to "skidding," it being the cutting out of brush and removal of rubbish in the way of getting the logs to the skidways. There is no merit in this objection.

There are other assignments of error, directed against some of the affidavits, and also to the admission and rejection of certain testimony; but there is not enough in any of them to warrant discussion. We think the affidavit in one of the cases defective,—that of Marion B. Mills,—as it does not state by whom the labor was performed for which recovery is sought. But this does not invalidate the judgment, which was for a return of the property. It, however, lessens the lien upon the logs in the amount of the judgment in Mills' favor.

The executions in the hands of the sheriff are claimed to be void—

*First.* Because there is no showing that the justice ever issued them; and,—

*Second.* Because they are not in the form contemplated by the statute.

The justice before whom the causes were tried, and who rendered the judgments, testified that he issued the executions, and he identified them; but it is averred by the plaintiff's counsel that it does not appear from the docket that he authorized the issuing of them. The statute provides (How. Stat. § 7053, subds. 12, 13) that the justice shall enter upon his docket the time of issuing execution, and the name of the officer to whom delivered, and the return of such execution when made. No such entries appear on the copies of the docket attached to the bill of exceptions. We are not prepared to hold that the failure to note on the docket the time of issuing the execution,

and to whom it was delivered, or the fact that it was issued, would vitiate an execution actually and properly issued by the justice, and delivered to the sheriff.

The act of 1877, at page 285, § 12, provides that execution shall issue on the judgment rendered,—

"And such execution, in addition to the commands in ordinary executions, shall command that the said products, or so much thereof as shall be necessary for that purpose, be sold to satisfy such judgment, and all costs, charges, and disbursements."

No such command was inserted in these executions in the words of the statute. The following is a copy of the execution issued in the case of William H. Clark (the others are similar, except in name of plaintiff and in amount of damages):

"STATE OF MICHIGAN, } ss.
  County of Newaygo,  }
          "To any Constable of said County:

"Whereas, judgment against Willard B. Lyons, defendant, for the sum of twenty-four dollars and forty-seven cents damages, and fifteen dollars and five cents costs, in favor of William H. Clark, plaintiff, for work and labor performed by the said plaintiff in cutting, skidding, loading, and hauling a certain lot of red and white oak sawlogs, as mentioned in plaintiff's declaration, was rendered by and before me, the undersigned, a justice of the peace of the township of Wilcox, in said county, on the 14th day of March, A. D. 1888, at the township aforesaid.

"You are therefore commanded, in the name of the people of the State of Michigan, to levy the said damages, with interest from said 14th day of March, 1888, and costs, of the goods and chattels of the said Willard B. Lyons, excepting such goods and chattels as are by law exempt from execution, namely, the above-described logs, upon which the plaintiff has a lien for said amount, and to bring the money before me, at my office in said township, in sixty days from the date hereof, to render to the said William H. Clark, the said plaintiff; and have you then and there this writ."

The counsel for plaintiff claim that the property to be

levied upon in this execution is not sufficiently described, as it only describes them as the logs mentioned in plaintiff's declaration, and that there is no specific command to sell the logs; that therefore the executions are defective and void, and the sheriff had no right, at the time of the demand of the property by the plaintiff, and at the date of commencement of suit, to hold the property, or any part of it. The counsel for defendant admits that the executions are defective in this last respect, but contends that the officer had the right to hold the property, if the executions were void, under the authority of *Vanneter v. Crossman*, 39 Mich. 610. But that case does not apply to the one at bar. In that case the attachment suits had not gone to judgment, and were pending. True, the writer of the opinion in that case says, in the course of his reasoning, that if the plaintiffs in attachment allowed their suit to go down the officer would still hold the property under their writ until he was notified of the discontinuance, but it was the plaintiffs in attachment who were seeking to bring replevin against the officer who obtained his possession of the property by their own writ of attachment.

That is not this case. Here, judgments had been, obtained on March 14, 1888, and the proceedings in attachment closed, save the issuing of executions, and the collecting of the judgments by a sale of the property under such executions. The executions were issued at the expiration of five days, on March 19, 1888. This suit in replevin was commenced March 30, 1888, 11 days after the issuing of the executions. By what authority was the sheriff then holding the property? Under the original attachment, or under his levies on the executions? And, if the executions were invalid, and he was holding under them, could he fall back upon the writs of attachment, and retain possession under them?

This act of 1887 repealed the then existing log-lien law of 1881. It is particular in giving forms to be used in the statement of lien, affidavit to be filed, and writ of attachment to be issued, in the filing of declaration, and finding of the justice. It also states, as before shown, what command, other than the ones found in ordinary executions, shall appear in the execution, but is silent as to the time the execution shall issue, or as to the result in case none is issued or served within any given time. Laws of 1887, pp. 280, 283–285. Section 11 of the act provides that—

" All writs of attachment issued under the provisions of this act * * * shall be served and returned as ordinary writs of attachment are served and returned, * * * except as herein otherwise provided; and the pleadings and all subsequent proceedings shall be the same as in other cases of attachment, except as herein otherwise provided."

Therefore we must look at the course of proceeding in ordinary attachments in order to answer these questions. The lien of the attachment continues until the levy of execution, if such levy was in a reasonable time. It appears from the evidence of the defendant that he made a levy under these executions, and before the replevin of the logs had posted notices of sale under such levies. There is no doubt, in fact or in law, but that he was holding the logs at the time of the issuing of the writ under the execution levies, and not under the attachment.

But we do not think the executions were so defective as to be void. They were handed to the same officer who held the logs under the attachment levies. When the logs were described in the execution as those mentioned in the plaintiff's declaration, they were sufficiently pointed out to the officer, who knew therefrom what logs were meant just as well as he would if the logs had been

specifically named in the execution. The command in the execution is that the officer levy upon these logs, and make the money out of them. This could not be done without a sale; and the conceded fact is that the officer, at the time the suit was brought, had levied upon these identical logs, and on no other property, and was proceeding to sell the same, under such levy, precisely as he would have done had there been an express and specific command in the execution so to do.

We find a case clearly in point on this subject, and which we think holds the true doctrine in such a case as this. In an attachment suit (*Merwin v. Hawker*, 31 Kan. 222, 1 Pac. Rep. 640), the command in the execution was as follows:

"We command you that of the goods and chattels of the said Charles W. Bates and John F. Randolph you cause to be made the debt, damages, and costs aforesaid, and for want of goods and chattels you cause the same to be made out of the lands and tenements of the said Charles W. Bates and John F. Randolph, to wit, the real property heretofore attached in this action, to wit:" (describing the property).

The court say that the first part of the command, to make the debt out of the goods and chattels of the defendant, must be held as a mere surplusage; and, in relation to the last part of the command:

"It is true the form of the last command should properly have been to 'sell the property attached and apply the proceeds in satisfaction of the judgment, whereas it in fact read to make the debt, damages, and costs out of such property. * * * * * * * *
"We think the difference is only an irregularity, which cannot be taken advantage of in any collateral proceeding. There was at the time of the levy a perfect lien upon the attached property, and the execution commanded the officer to subject such attached property to the payment of such lien. It may be laid down as a general rule that where the process contains the specific

command which it ought to contain, and where the thing specifically commanded is the only thing done by the officer, such process will be sustained, although it contains other and improper commands. Such other commands, not being obeyed by the officer, will be treated as surplusage." See, also, *Pracht v. Pister,* 30 Kan. 568 (1 Pac. Rep. 638).

In the case before us the execution plainly commands the officer to subject the attached property to the payment of the lien. This the officer was proceeding to do when the property was taken from him under the writ in replevin. It amounts—the command—in effect to the command of the statute, and the defendant so understood and acted upon it. The irregularity, consisting in the fact that there was no express command to sell, cannot be taken advantage of in this collateral proceeding.

The judgment below is affirmed, with costs.

LONG, J., concurred with MORSE, J.

CAMPBELL, J., *(dissenting).* There are several defects in the proceedings to establish the liens set up in this case, but as one is essentially complete it is hardly necessary to discuss the rest, which would in my judgment be answers to the defense, if considered.

The facts found show that until a considerable time after the judgments Lyman T. Kinney was owner of the logs in question in fact and in law, and had not been paid for them. The title of plaintiff was not acquired from him until 15 days after the judgments. Up to that time, plaintiff could not have disregarded his ownership. Assuming, which is not clear, that the plaintiff was notified of the proceedings, plaintiff was not then the owner, and had a right to assume that if Mr. Kinney, who was the only legal owner, was served, he could defend his title. If his title was not bound by the judgments, they were void; and the fact that others were served can-

not make good a judgment *in rem,* to which the legal owner was a stranger.

I think the judgment of the circuit court is erroneous, and should be reversed.

SHERWOOD, C. J., and CHAMPLIN, J., did not sit.