# COURT OF APPEALS

OF THE

## STATE OF COLORADO.

JANUARY TERM, 1899.

[No. 1521.]

THE LOS ANGELES GOLD MINE CO. v. CAMPBELL.

1. COSTS—ATTORNEY'S FEE—EXCESSIVE.

Under the mechanic's lien act of 1893, providing for the taxing of an attorney fee as cost in case where plaintiff obtains judgment of foreclosure, $400 was an excessive fee to tax in a suit brought to foreclose for claims amounting to $2,000, in which there was a default judgment.

2. SAME.

Under the mechanic's lien act of 1893, providing for the taxing of an attorney fee where plaintiff shall obtain a judgment and decree for foreclosure, the fee taxed should be based upon the amount for which the foreclosure decree is entered, and not upon the amount for which suit was brought embracing a number of claims settled before judgment.

3. CONSTITUTIONAL LAW—ATTORNEYS' FEES—COSTS.

Section 18 of the mechanic's lien act of 1893 (Sess. Laws, 1893, p. 325), providing that in all suits for the foreclosure of liens, under said act, in which plaintiff shall obtain a judgment and decree for foreclosure, there shall be taxed as costs, in addition to other costs, an attorney fee to be fixed by the court, is in contravention of the constitution of the United States and void.

VOL. XIII—1 (1)

*Appeal from the District Court of El Paso County.*

Messrs. CARPENTER & McBIRD, for appellant.

No appearance for appellee.

BISSELL, J.

Notwithstanding the failure of the mining company to take issue on the complaint and contest the plaintiff's right to recover, it has appealed from the judgment and attacks its validity because of the inclusion therein of attorneys' fees. The action of the court was predicated on section 18 of the mechanic's lien act of 1893, which is as follows:

"In all suits for the foreclosure of liens provided for in this act, in which the plaintiff shall obtain a judgment and decree of foreclosure against the property described in said lien, there shall be taxed as costs, in addition to the costs already provided for in such cases, a reasonable sum as an attorney fee to be fixed by the court at the time of rendering such judgment and decree." Session Laws, 1893, p. 325.

In 1896 the plaintiff and some fifteen others were laborers employed by the Los Angeles Gold Mine Company. It became indebted to them for labor and materials aggregating $1,919.93. The claims were not paid and the various parties filed liens under the statute and three days afterwards brought suit to enforce them. The suit was brought in the name of Campbell in his own behalf and as assignee of all these various claimants. Process was served, the defendant company appeared and demurred and thereafter withdrew the demurrer and took leave to answer. The company failed to plead, and the plaintiff took a default for want of answer, proved up, and had judgment of foreclosure. When the default was entered it appeared that all the claims embraced in the suit had been paid except the plaintiff's, and he only had judgment and a foreclosure decree for the sum of $146 and an attorney's fee of $400. We are not advised as to the evi-

dence produced at the time judgment was rendered although there appears in the record testimony which was apparently given on that hearing. It is not so identified by bill or otherwise that we can rightly conclude that this is the proof on which the court proceeded. However this may be, and it is unimportant as we view the case, the defendant came in with a motion to set aside the default and to vacate the taxation of costs in so far as it included attorneys' fees. On this hearing testimony was offered and many of the same witnesses produced who testified when the default was taken. The court overruled the motion, vacated its order staying the execution, refused to set aside the default, and its judgment antecedently entered therefore stood. The company, which appeals, attacks the court's action on the motion, as well as the legality of its judgment which included the attorneys' fees.

We are quite ready to concede with the appellant that the court ought to have vacated its judgment in so far as it taxed $400 for attorneys' fees, and if this was the only question in the case we should unhesitatingly either vacate or modify the judgment. It has been decided in this state, following the supreme court of the United States, that where the question at issue is one which respects the value of services rendered by attorneys the jury to which the matter is submitted may disregard the evidence of the witnesses, and on their own judgment and experience determine the sum which the attorneys ought to receive for their labor. This principle would seem to justify us, if there was nothing in the record otherwise to warrant it, to use our own professional judgment and experience in determining the propriety of the action of the trial court in fixing the fees of the counsel. Without hesitation we conclude the court erred in fixing the fee at the sum of $400 even though the judgment and foreclosure had been for the entire sum stated in the complaint. The fee is unreasonable, and for the collection of $2,000 or thereabouts by suit we know of no custom or practice which without a protracted and bitterly contested trial would justify an attorney to charge twenty-five per cent

of the amount involved as a fee for collection.   It must like-
wise be true as a matter of law that when the costs by way
of attorneys' fees are taxed in favor of the successful party
the defeated litigant ought not to be compelled to pay more
than would be a reasonable fee if it was a case of charge
against the client who had employed the lawyer to prosecute
his case.   Under the circumstances as exhibited by this rec-
ord we are of the opinion that $100 would have been more
than an ample charge for an unlitigated case involving only
the collection of this amount of money, and the simple prep-
aration of the liens and a consolidated complaint based on
them.   We should not, if this was the only question in the
case, hesitate to modify the judgment and reduce it to that
extent.

There is another and a better reason, however, for denying
the regularity and validity of the judgment as it stands, even
conceding the constitutionality of the statute.   By the very
terms of the act it is provided that only in suits for the fore-
closure of liens in which the plaintiff shall obtain judgment
and a decree of foreclosure shall the attorneys' fees be taxed.
The statute itself, therefore, distinctly provides that the right
to have attorneys' fees taxed at all is dependent on the fore-
closure, and unless the plaintiff succeeds in obtaining fore-
closure he may not mulct the defendant in his fees as part
of the costs.   Under these circumstances, therefore, they
should be computed on the extent of the judgment which he
obtains and for which the foreclosure is ordered.   In this
case the foreclosure was only for the sum of $146; the bal-
ance of the claims had been paid prior to the entry of judg-
ment.   There was no foreclosure as to the balance of the sum
claimed in the suit, and the judgment itself being only for
the sum of $146 and for the foreclosure of Campbell's lien
alone, it is only for that particular foreclosure for which
attorneys' fees could be taxed as costs.   Manifestly the
charge of $400 for foreclosing a lien for $146 would not only
be unreasonable, but it could under no circumstances be

defended or maintained.  In this aspect of the case the reduction would be even below the amount already indicated.

Aside from all these considerations, however, we have reached the conclusion that this statute is fundamentally bad and cannot be sustained.  We put the decision on this precise ground that the parties may obtain, if they choose, the opinion of the supreme court on the question.  The constitutionality of acts which permit plaintiffs in suits of various descriptions to have attorneys' fees taxed as costs have been before many courts for consideration.  They have mainly been suits against railroad companies to recover for stock killed or property destroyed by fire.  In only one or two cases to which our attention has been directed have such provisions been found in statutes in the nature of lien acts.  On principle we can discover no difference between the two.  In either case it is an attempt to confer on a certain class of suitors extraordinary rights and privileges, and subject parties, who have incurred debts for which under the statute liens may be filed with the right of foreclosure, to a liability beyond that imposed on other debtors.  We are free to confess that lien acts have been upheld in most states, and the extraordinary privileges conferred by these acts sustained on the theory that they are beneficent in their purpose, praiseworthy in the ends which they seek to accomplish, and designed to protect a class of people, to wit, laborers, in the collection of their wages.  The statutes have been largely extended by the efforts of other people until now not only are laborers protected by these enactments, but material men, contractors and others, who were never, according to the original design and purpose of these statutes, intended to be embraced within their scope and purpose.  It may be very gravely questioned whether the decisions upholding the statutes with reference to these other parties can on principle be sustained, for there is no reason apparent to the average intelligence which ought to give a man who undertakes to build a house any other or greater rights in the collection of his debt and the enforcement of his claim than to any other

tradesman who furnishes supplies to the individual or to the family. However much we may question the propriety or justness of such legislation the principle has become too firmly settled in the adjudications to be either attacked or overturned. We are, however, unable to see that the principle on which these lien statutes have been upheld will defend or support the particular enactment under consideration. All debtors should occupy the same common plane, and no debtor should have the right to maintain his suit in any other or different method, or with any other or greater advantage than that which is given to other debtors for the purpose of collecting their claims. It will be observed that by the terms of this statute the remedy is not at all reciprocal, and although the plaintiff having a judgment of foreclosure may have attorneys' fees taxed, the defendant who contests the claim does not enjoy equal advantages and privileges, and may not recover costs for his defensive litigation which has been forced on him by his adversary. In addition there are many reasons which can be urged against the validity of such enactments. In the controversy between the lien claimant and the debtor grave and legitimate questions may arise in regard to the amount of the debt and the extent of the plaintiff's claim. The material man may assert a claim for materials furnished in a very considerable sum beyond that which according to the debtor's contention is well based. The prices may not be according to the contract, or, if there be no special agreement concerning the price, they may be charged at a sum beyond that which the debtor believes to be a fair and reasonable price. He is either compelled to pay the claim as asserted or he must litigate with the material man as to the amount of his recovery. It might easily happen that a lien would be filed for $6,000 and the judgment be for less than seventy-five per cent of it, thus exhibiting the fact that the defendant had a legitimate ground of defense and a legitimate right to contest with his adversary, be successful in reducing the claim, and yet the law visits on him a penalty for an honest and a just litigation, in a sum which would

consume the reduction which he had legitimately established. Dozens of other illustrations of a similar character might be cited, but the principle and basis on which the decisions rest which hold such provisions unconstitutional have been so thoroughly elaborated and the reasons for the doctrine so fully expressed, that no excuse can be found for their re-expression other than the desire to round out the opinion and formulate an irrefragable argument. The whole subject has been thoroughly and carefully examined and determined in a lucid opinion by one of the eminent justices of the supreme court of the United States, Justice Brewer. According to that decision statutes of this description infract the provisions of the federal constitution. If this be true they cannot be upheld. Whatever might be our own views on such matters it is, as we understand, an almost universal practice for the state courts to accept the construction put by that court on the federal compact. We do not wish to be understood as in any manner dissenting from that opinion. It is not only perspicuous, plain and satisfactory, but it is put in sound and vigorous English and unanswerable. We are in entire accord with its argument as well as its conclusions. We desire, however, to give prominence to the idea that we regard it as a controlling and authoritative exposition by our highest national tribunal which we ought to follow. *Gulf, Colorado & Santa Fé Ry. Co. v. Ellis*, 165 U. S. 150; *Wilder v. The Chicago & W. Michigan Ry. Co.*, 70 Mich. 382; *Schut v. The Chicago & W. Michigan Ry. Co.*, 70 Mich. 433; *Lafferty v. The Chicago & W. Michigan Ry. Co.*, 71 Mich. 35; *The Grand Rapids Chair Co. v. Runnels*, 77 Mich. 104; *Jolliffe v. Brown et al.*, 14 Wash. 155; *Coal Co. v. Rosser*, 53 Ohio St. 12; *State v. F. C. Coal & Coke Co.*, 33 W. Va. 188; *South & North Alabama Ry. Co. v. Morris*, 65 Ala. 193.

These are the only decisions to which our attention has been directed, or which in a hasty examination of the question we have been able to find for ourselves. The appellee failed to file his brief within time, though he tendered one

for filing after the date specified, which we examined in the hope that therein we might find some aid to our conclusion. Counsel, however, was content to rest his brief on a general statement of his opinion without a citation of authority. Being thus unaided, save by the brief of the appellants, we have resolved the question according to the light thus acquired as we believe in accordance with principle, and the judgment will therefore be reversed.

*Reversed.*